# STATE OF MICHIGAN

# COURT OF APPEALS

In re D. J. LONG, Minor.

UNPUBLISHED
December 15, 2016

No. 331908
Wayne Circuit Court
Family Division
LC No. 15-520271-NA

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his 10-year-old son after years of abandonment. Even within these proceedings, respondent initially expressed no desire to take custody of his son, and only belatedly fought the termination petition. He now challenges the statutory grounds supporting termination and argues that termination of his parental rights was not in his son's best interests. We affirm.

## I. BACKGROUND

DL was born on December 31, 2005, to respondent and his then-girlfriend, KL. It appears that respondent never lived with mother or child. Just before the child's third birthday, the pair voluntarily placed DL in the care of a nonrelative and named her the child's legal guardian. DL lived in that home until January 2014. In the care of this guardian, DL was allegedly sexually abused by two separate men. Despite knowledge of the sexual abuse as early as June 2013, KL did not seek termination of the guardianship and return of her son until January 2014. DL then moved with his mother to Florida. DL subsequently acted out sexually against a younger sibling and KL asked respondent's sister and her husband to take custody of him. DL's aunt and uncle agreed and DL remains in their care.

In June 2015, DL sexually abused a neighborhood child. Child Protective Services (CPS) became involved. At that time, DL reported his sexual abuse at the hands of his former guardian's neighbor and then boyfriend. CPS and his current guardians enacted a safety plan to protect other children in DL's sphere. DL required constant monitoring at home and school and in the community.

Department of Health and Human Services (DHHS) caseworker Monique Ferranto interviewed respondent shortly after the CPS report. Respondent indicated that over the years "he had minimal contact with [DL]." Ferranto testified that respondent reported only three meetings with the child during his life. Ferranto inquired whether respondent could take custody

of his child but "he indicated that he was unable to care for [DL] financially and he was unable – because he was unemployed. And that he could not afford to care for [DL]."

Respondent claimed ignorance of DL's sexual abuse until informed by Ferranto. Shortly after the telephone interview, a courtesy worker visited respondent's Jackson home to evaluate it for placement. The home was appropriate for the three children who already lived there. However, the home lacked sufficient bedrooms to give DL his own room as required under his safety plan. And respondent reported "that he did not want to put those children at risk [of sexual abuse] by taking in [DL]."

During a subsequent family team meeting, respondent admitted that he voluntarily released his parental rights to another son in 2010 after the DHHS became involved. He denied that services were offered but Ferranto showed him documentation disproving his claim. Respondent also had been diagnosed with bipolar disorder and manic depression as a child, but no longer received treatment. Respondent carried an extensive criminal history for robbery, drug possession, retail fraud, and failure to support DL. He still owed more than $25,000 in back support. Although respondent admitted abuse of marijuana in the past, he contended that he no longer used the drug.

Respondent contradicted Ferranto's version of events. He asserted that his home actually had four bedrooms and therefore arrangements could be made for DL to have his own room. He insisted that he was willing to implement any required safety plans and assist with DL's treatment. By the time of the February 2016 termination hearing, respondent had been employed fulltime for approximately six weeks. As a result, he claimed he could now financially support DL. Despite that, respondent conceded that he had provided no financial support for his sister's care of DL.

Respondent also challenged Ferranto's testimony about the extent of his contact with DL over the years. Respondent claimed that he often spent the night at KL's house to spend time with DL during the first three years of his life. He described visits with DL while DL lived in his first guardianship. The guardian often denied respondent visitation but he did not seek termination of the guardianship because he was still able to see DL when KL returned to Michigan and exercised parenting time. Moreover, respondent claimed, "at that point in time I wasn't stable enough to take on another responsibility" in addition to the other children he was raising. Respondent admitted that during one interval he did not see DL for "a couple years." Since DL's return to Michigan to live with respondent's sister, respondent had been allowed three visits with the child, twice for unsupervised weekend visits. Respondent could not count the number of times he had seen DL during his life "because it's been a whole bunch of times." However, when CPS intervened, his visitation rights were suspended.

Ultimately, respondent asked for custody of his son or in the alternative, that his rights be retained while DL remained in the home of respondent's sister. Respondent's sister took the stand and testified that she preferred that respondent's rights be terminated because the child was happy in his placement and did not want contact with his father.

The court terminated respondent's rights. Respondent now appeals.

## II. STATUTORY GROUNDS

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven. The petitioner bears the burden of proving that ground. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). If the court seeks termination at the initial disposition, as in this case, legally admissible evidence must underlie the termination decision. MCR 3.977(E)(2), (3). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

Respondent first contends that the circuit court could not terminate his parental rights because the DHHS did not "give[] [him] the opportunity to plan for his child." "Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). The DHHS is not required to make such efforts, however, if it seeks termination at the initial disposition. *Id*. at 463. This was the situation before the court.

Respondent also contends that the DHHS created the ground for termination— desertion—by denying him parenting time during these proceedings. "[W]hen the state deliberately takes action with the purpose of 'virtually assur[ing] the creation of a ground for termination of parental rights,' and then proceeds to seek termination on that very ground, the state violates the due process rights of the parent." *In re B & J*, 279 Mich App 12, 20; 756 NW2d 234 (2008). In *B & J*, 279 Mich App at 15, 19, the DHHS reported the respondent-parents as illegal aliens and secured their deportation, thereby forcing the respondents to desert their children, who were American citizens and remained in this country. Here, neither the DHHS nor the court relied upon the lack of contact during these proceedings to terminate respondent's parental rights. They focused on respondent's pre-petition conduct. Accordingly, respondent can demonstrate no reversible error.

Respondent further challenges the factual support for the court's termination decision. The circuit court terminated respondent's parental rights pursuant to the following factors:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> (a) The child has been deserted under either of the following circumstances:
>
> * * *
>
> (*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

-3-

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

* * *

(*l*) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of this chapter or a similar law of another state. [MCL 712A.19b(3).]

We initially note that the circuit court improperly relied upon the 2010 termination of respondent's parental rights to another child to support termination in this case under factor (*l*). In *In re Gach*, ___ Mich App ___; ___ NW2d ___ (Docket No. 328714, issued April 19, 2016), slip op at 7, this Court declared that subsection (*l*) "provides constitutionally deficient protection to a respondent's due process interest in raising his or her children" and thereby invalidated termination on this ground.

Termination was also insupportable under factor (b)(*ii*), failure to protect from sexual abuse. We do not doubt that DL has faced abuse. However, the DHHS was required to present legally admissible evidence to support this ground. The only evidence at the termination hearing that DL had been abused was hearsay reports from the caseworker. We also find no record evidence specifically addressing how DL could be harmed if placed in respondent's care. As such, supporting termination under factor (j) was questionable.

But the DHHS provided clear and convincing, legally admissible evidence to support termination under factor (a)(*ii*). Termination is warranted under this ground when the parent has deserted his or her child for 91 days without seeking custody. Respondent admitted at the hearing that he once went "a couple years" without seeing DL. For most of DL's life, respondent was content to see the child when KL made special efforts to facilitate visits.

-4-

Respondent did not seek custody of DL, and indeed indicated that he did not desire custody of his son, until midway through the current proceedings. Accordingly, termination based on desertion was adequately supported. See *In re TM (After Remand)*, 245 Mich App 181, 193-194; 628 NW2d 570 (2001) (termination supported where the respondent "failed to make any substantial effort to communicate with [the child] or obtain assistance in regaining custody of her for a period well beyond the statutory period"), overruled in part on other grounds by *In re Morris*, 491 Mich 81, 115-121; 815 NW2d 62 (2012); *In re Mayfield*, 198 Mich App 226, 230, 235; 497 NW2d 578 (1993) (termination supported where the respondent did not seek custody of his child for five years and had not seen the child for two).

Similarly, clear and convincing legally admissible evidence established that respondent had not provided proper care and custody for his child and would be unable to do so within a reasonable time, supporting termination under factor (g). Respondent had never provided financially for his child and owed more than $25,000 in child support arrearages. When KL decided to place then two-year-old DL in a nonrelative guardianship, respondent made no attempt to take custody of his child or find a more suitable relative placement. For six years, the guardian denied respondent visits with his son and yet respondent simply waited for KL to return to Michigan to exercise parenting time with her. Although respondent finally secured employment during these proceedings, he had not demonstrated an ongoing financial ability to provide for his son. Moreover, respondent demonstrated a lack of awareness of DL's special needs and the work involved in protecting other children from sexual predation by DL. Accordingly, we discern no error in the circuit court's termination of respondent's parental rights.

## III. BEST INTERESTS

Finally, respondent contends that termination of his parental rights was not in DL's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The lower court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors in this consideration include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Even accepting respondent's testimony as true and accurate, respondent has had very little contact with DL. Respondent made no effort to create a bond with the child and as a result, DL barely knows him. In contrast, DL has done well in his current placement with his paternal aunt and uncle and these relatives intend to adopt him. DL's aunt and uncle took him in despite DL's behaviors of sexually acting out. They have implemented a safety protocol in the home and are actively involved in DL's counseling and other treatment. DL is old enough to

understand that certain adults are committed to his wellbeing while others have shown little consideration. As such, DL has expressed his desire to remain with his aunt and have no contact with his father. The evidence therefore preponderated in favor of termination and the circuit court committed no error.

We affirm.

/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro