*In re* IEM

Docket No. 208851. Submitted December 2, 1998, at Lansing. Decided January 19, 1999, at 9:10 A.M.

The Family Independence Agency petitioned the Emmet County Probate Court for the termination of T.Y.M.'s parental rights to I.E.M., a minor, on the ground that T.Y.M., a cognitively and emotionally impaired seventeen-year-old single mother, without regard to intent, failed to provide proper care or custody for I.E.M. and there is no reasonable expectation that T.Y.M. will be able to provide proper care and custody within a reasonable time considering the age of the child. The court, Frederick R. Mulhauser, J., entered an order terminating T.Y.M.'s parental rights. The respondent appealed, alleging, in part, that the court lacked jurisdiction because I.E.M. is an Indian child.

The Court of Appeals *held*:

1. Although the limited information provided to the probate court regarding the Indian heritage of the respondent and I.E.M. was inconclusive regarding the respondent's tribal membership status, it was sufficient to require the petitioner to provide notice regarding the proceeding in compliance with the tribal notification requirements of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*

2. The petitioner's efforts to determine I.E.M.'s possible tribal affiliation and provide notice did not satisfy the notice requirements of the ICWA, and it was not the respondent's responsibility to establish the applicability of the ICWA. Only after notice has been provided and a tribe has failed to respond or has intervened but is unable to determine the child's eligibility for membership does the burden shift to the parties to show that the ICWA still applies.

3. The probate court and the petitioner failed to comply with the notice requirements. However, the probate court properly terminated the respondent's parental rights according to Michigan law. Therefore, the court's order must be conditionally affirmed and the matter must be remanded to allow the court and the petitioner to provide proper notice to any interested Indian tribe pursuant to the ICWA.

Conditionally affirmed and remanded.

1. INDIANS — PARENT AND CHILD — INDIAN CHILD WELFARE ACT — FOSTER CARE — TERMINATION OF PARENTAL RIGHTS.

   Child custody proceedings involving the foster care placement or termination of parental rights to an Indian child are subject to the specific federal procedures and standards provided in the Indian Child Welfare Act (25 USC 1901 *et seq.*).

2. INDIANS — PARENT AND CHILD — INDIAN CHILD WELFARE ACT — TERMINATION OF PARENTAL RIGHTS — TRIBAL NOTIFICATION.

   The tribal notification provisions of the Indian Child Welfare Act and the Michigan Court Rules must be complied with in an action by the Family Independence Agency seeking the termination of parental rights to a child that the probate court knows or has reason to know is an Indian child; the proper remedy where the Court of Appeals determines that, except for a failure to comply with the notification provisions, the probate court properly terminated the respondent's parental rights is the conditional affirmance of the order of termination and the remand of the matter to allow proper notification (25 USC 1912[a]; MCR 5.980[A][2]).

3. INDIANS — INDIAN CHILD WELFARE ACT — WORDS AND PHRASES — INDIAN CHILD.

   An "Indian child" for purposes of the Indian Child Welfare Act is any unmarried individual less than eighteen years of age who is either an Indian tribe member or both eligible for Indian tribe membership and an Indian tribe member's biological child; enrollment is not always required in order to be a member of a tribe (25 USC 1903[4]).

4. INDIANS — PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT — BURDEN OF PROOF.

   It is not the responsibility of a parent to establish the applicability of the Indian Child Welfare Act in an action by the Family Independence Agency seeking termination of parental rights to a child that the probate court has reason to believe has some Indian heritage; only after tribal notification has been provided pursuant to the Indian Child Welfare Act and the Michigan Court Rules and the tribe has failed to respond or has intervened but is unable to determine the child's eligibility for membership does the burden shift to the parties to show that the act still applies (25 USC 1912[a]; MCR 5.980[A][2]).

5. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

   A court may order termination of a parent's rights to a child where clear and convincing evidence establishes that at least one statu-

tory ground for termination exists; the parent bears the burden of going forward with the evidence that termination is clearly not in the child's best interests once a statutory ground for termination has been proved by clear and convincing evidence (MCL 712A.19b[3]; MSA 27.3178[598.19b][3]; MCR 5.974[F][3]).

6. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PLACEMENT OF CHILD WITH RELATIVES.

The philosophy statements in MCL 712A.1(3); MSA 27.3178(598.1)(3) and MCR 5.902(B) regarding the preference underlying the Juvenile Code that a child coming within the jurisdiction of the probate court remain in its own home does not require that a court removing a child from the control of its parents place the child with relatives; a probate court may terminate parental rights instead of placing the child with relatives where the court determines that such action is in the child's best interests.

*Robert J. Engel*, Prosecuting Attorney, and *Jennifer Herschelman*, Assistant Prosecuting Attorney, for the petitioner.

*Robert J. Butts*, for the respondent. Cheboygan

Before: GAGE, P.J., and MACKENZIE and WHITE, JJ.

GAGE, P.J. Respondent T.Y.M., a minor, appeals as of right the probate court order terminating her parental rights to her minor child, I.E.M., pursuant to MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g).[1] Although we conclude that the probate court did not err in its findings of fact or by ordering termination of respondent's parental rights, we must conditionally affirm and remand this case so that the court may provide notice of these proceedings to any interested Indian tribe, as required by the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*

---

[1] An August 29, 1997, order was entered recognizing the release by the father, Charles Jeffrey Grimm, of his parental rights regarding Isabell. The father is not a party to this appeal.

Respondent is a cognitively and emotionally impaired seventeen-year-old single mother. The original petition filed by petitioner Family Independence Agency (FIA) sought jurisdiction over both respondent and I.E.M., alleging that the home life provided by respondent's mother Beverly was generally chaotic, that respondent feared her younger autistic sister J.M. might assault her, and that Beverly had ignored repeated caseworker warnings regarding "the risk of sexual activity to the girls in [respondent's] situation," thus resulting in respondent's pregnancy with I.E.M. The FIA alleged concern regarding I.E.M.'s welfare because of respondent's cognitive and emotional disorders and her resultant poor decision-making ability, respondent's lack of parenting skills, and an alleged risk of harm arising from J.M.'s unpredictable behavior. The FIA requested removal of both respondent and I.E.M. from Beverly's home and recommended their placement together in foster care. At the April 29, 1997, preliminary hearing, the parties agreed to a temporary out-of-home placement for respondent and I.E.M. and to adjourn the hearing.

The FIA subsequently filed a June 10, 1997, amended petition that withdrew its prior neglect petition regarding respondent. Respondent therefore returned home with Beverly in early June. On the amended petition, the FIA checked a box that indicated I.E.M. was a "[m]ember of or eligible for membership in American Indian Tribe or Band," but the petition contained no further information regarding either respondent's or I.E.M.'s potential Indian heritage. The lengthy amended petition also contained further allegations regarding the potential for harm to I.E.M. while in respondent's care. Specifically, the amended

petition alleged that, despite the provision of parenting support and services to her, respondent had not enhanced her parenting skills, that the attachment and bonding between respondent and I.E.M. was decreasing, and that respondent refused to acknowledge her shortcomings as a parent and her need for constant supervision and support. The amended petition also contained a community mental health counselor's evaluation of respondent as suffering from an "[a]djustment [d]isorder with mixed disturbance of emotions and conduct" and a schizotypal personality disorder and described psychotic behavior exhibited by respondent, including hallucinations and paranoia. At the June 11, 1997, preliminary hearing regarding the amended petition, respondent's counsel consented to an out-of-home placement for I.E.M.

After a three-day trial, a jury concluded that the probate court had jurisdiction over I.E.M.. After a subsequent two-day termination hearing, the probate court concluded that clear and convincing evidence existed that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g).

Respondent first contends that the probate court may not have properly had jurisdiction over this case and that the court's order of termination may therefore be invalid because the court failed to ascertain whether I.E.M. was eligible for membership in an Indian tribe and failed to notify the applicable tribe of the instant proceedings as required by 25 USC 1912(a). Section 1914 of the ICWA confers on "any parent . . . from whose custody [any Indian child who is the subject of any action for termination of parental rights under state law] was removed" the right to

"petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." See also *In re Kreft*, 148 Mich App 682, 687-689; 384 NW2d 843 (1986) (concluding mother whose parental rights were terminated by Michigan court had standing pursuant to 25 USC 1914 to challenge on appeal alleged violations of ICWA, even without tribe's participation in appeal). Whether the probate court failed to satisfy a notice obligation imposed by the ICWA involves a legal question of statutory interpretation that we review de novo. *Yaldo v North Pointe Ins Co*, 457 Mich 341, 344; 578 NW2d 274 (1998).

Pursuant to the ICWA, child custody proceedings involving foster care placement or termination of parental rights to an Indian child are subject to specific federal procedures and standards. *In re Elliott*, 218 Mich App 196, 201; 554 NW2d 32 (1996). "[T]o promote the stability and security of Indian tribes and families," Congress established within the ICWA "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ." 25 USC 1902. One of the requirements imposed by the ICWA is that an interested Indian tribe receive notice of termination proceedings involving Indian children:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the

pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. [25 USC 1912(a).]

See also MCR 5.980(A)(2) (requiring that a court presiding over a protective proceeding involving an Indian child notify "the child's tribe and the child's parents or Indian custodian and, if the tribe is unknown, . . . the Secretary of the Interior" of the proceeding). For ICWA purposes, an "Indian child" is any unmarried individual less than eighteen years of age who is either (1) an Indian tribe member or (2) both eligible for Indian tribe membership and an Indian tribe member's biological child. 25 USC 1903(4).

The FIA argues that the tribal notice requirement was inapplicable in the instant case because it was not established before the probate court that I.E.M. was an Indian child as defined by the ICWA. At the April 29, 1997, preliminary hearing, pursuant to MCR 5.965(B)(7), the referee inquired whether respondent was an Indian tribe member or was eligible for Indian tribe membership, to which Beverly replied, "[S]he has a little [I]ndian in her, but I don't know if it's enough to qualify." Subsequently, at the June 11, 1997, preliminary hearing regarding the FIA's amended petition, respondent answered affirmatively when the referee asked whether respondent had any Indian blood. Beverly elaborated that respondent's father's family had some Indian blood, but that she did not know whether respondent qualified for membership in any

Indian tribe. The referee noted for the record that respondent was potentially an Indian tribe member and ordered that the FIA further investigate respondent's eligibility for tribal membership.

The FIA claims that I.E.M. is not eligible for Indian tribe membership as the biological child of a member because respondent failed to enroll or otherwise supply some form of membership verification from any Indian tribe. However, the FIA's argument ignores that tribal membership is not defined by enrollment.

> Enrollment is not always required in order to be a member of a tribe. Some tribes do not have written rolls. Others have rolls that list only persons that were members as of a certain date. Enrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative. [Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed Reg 67584, 67586 (1979),[2] citing *United States v Broncheau,*597 F2d 1260, 1263 (CA 9, 1979).]

See also *People ex rel South Dakota Dep't of Social Services in re CH*, 510 NW2d 119, 123 (SD, 1993); *In re HD*, 11 Kan App 2d 531, 535-536; 729 P2d 1234 (1986). Because respondent's lack of enrollment in an Indian tribe is not dispositive of whether I.E.M. qualifies as an Indian child, we must consider whether the limited information provided to the probate court regarding respondent's Indian heritage sufficed to invoke the ICWA's notice requirement.[3]

---

[2] The guidelines were "not intended to have binding legislative effect." 44 Fed Reg, *supra*, p 67584. However, we find them persuasive and note that "[t]he courts that have considered notice issues have, however, followed the recommended procedures." *In re MCP*, 153 Vt 275, 286; 571 A2d 627 (1989).

[3] In *In re Shawboose*, 175 Mich App 637, 639; 438 NW2d 272 (1989), this Court concluded that the ICWA did not apply when the "respondent

Although the brief testimony regarding respondent's Indian ancestry was inconclusive regarding her tribal membership status, the information was sufficient to require the FIA to provide notice regarding this proceeding. The Bureau of Indian Affairs guidelines enumerate "the most common circumstances giving rise to a reasonable belief that a child may be an Indian." 44 Fed Reg, *supra*, p 67586. The guidelines provide:

B.1. Determination That Child Is an Indian

(a) When a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe. . . .

\*      \*      \*

(c) Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include but are not limited to the following:

(i) Any party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child.

(ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which *suggests* that the child is an Indian child.

(iii) The child who is the subject of the proceeding gives the court reason to believe he or she is an Indian child.

(iv) The residence or the domicile of the child, his or her biological parents, or the Indian custodian is known by the

---

never met the prerequisite of being an enrolled member of an Indian tribe." The *Shawboose* Court did not address the issue of proper notice, however, and its statement regarding the respondent's enrollment may not be interpreted as imposing an enrollment prerequisite to application of the ICWA in every case involving an Indian child. The respondent's enrollment constituted a dispositive issue in *Shawboose* only because one of the potentially appropriate tribes, which had already received notice of those proceedings and was given the opportunity to intervene, had itself declined jurisdiction on the basis that the respondent was not an enrolled member of the tribe. *Id.* at 639-640.

court to be or is shown to be a predominantly Indian community.

(v) An officer of the court involved in the proceeding has knowledge that the child *may* be an Indian child. [*Id.* (emphasis added).]

See also *In the Interest of HD, supra* at 534-536. Respondent's and Beverly's testimony certainly at least suggests that respondent, and consequently I.E.M., potentially qualify as tribal members, and we therefore conclude that their testimony obligated the probate court to ensure that the FIA complied with the ICWA's tribal notification requirement. *In re JT*, 166 Vt 173, 181-182; 693 A2d 283 (1997) (father's statement to psychologist that his father was "full-blooded Mohican" sufficient to trigger obligation of trial court to inquire regarding child's Indian status by providing notice to tribe); *In re Pedro N*, 35 Cal App 4th 183, 186; 41 Cal Rptr 2d 819 (1995) ("The Indian status of the child need not be certain in order to trigger notice."); *In re MCP*, 153 Vt 275, 288-289; 571 A2d 627 (1989) (concluding that lower court erred in failing to require tribal notice where adoptive father was member of Mohawk Indian Tribe who asserted that child was eligible for membership). We agree with the Vermont Supreme Court's observation that "[t]o maintain stability in placements of children in juvenile proceedings, it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child," *id.* at 289, and that "Indian tribes are in a better position to determine the membership of individuals who have some relationship to the tribe and the court should defer to this expertise." *Id.* at 285-286. See also *In re Shawboose*, 175 Mich App 637, 639; 438 NW2d 272 (1989) (The issue whether the

minor children were Indian children was one for the tribes and not for the probate court to decide.). "It is impossible for a tribe to determine whether a child is a tribal member or eligible for membership if it never receives notice of the proceeding." *In re JT, supra* at 183. Our permitting the probate court and the FIA to simply ignore the testimony of record implicating the ICWA notification requirement would contravene the explicitly stated congressional objective "to promote the stability and security of Indian tribes and families," 25 USC 1902, and we decline to permit the court and the FIA to disregard Congress' expressed intent.

Because the probate court had reason to believe I.E.M. had some unspecified Indian heritage, the FIA was required to send notice of the probate court proceedings and of the applicable tribe's right of intervention through registered mail, return receipt requested, to the Secretary of the Interior. 25 USC 1912(a); MCR 5.980(A)(2). The lower court record, however, does not reflect that the FIA subsequently pursued the matter. The FIA includes in its brief on appeal a document requesting a determination regarding I.E.M.'s possible tribal affiliation that it allegedly sent to the Michigan Indian Child Welfare Agency, and notes that it made a telephone call to the local Odawa Indian Tribe. These efforts by the FIA fall far short of satisfying the ICWA's notice requirements. First, no indication exists that the FIA sent the document by registered mail, return receipt requested. 25 USC 1912(a). Second, the document was not correctly addressed to the Secretary of the Interior.[4] *Id.* Third,

---

[4] Although the statute, 25 USC 1912(a), explains that when the child's tribe has not been determined, notice must go to the Secretary of the Interior, we note that the regulations implementing the statute require that for

the document nowhere informs any potentially interested tribe of its right of intervention. *Id.* The FIA's telephone call also did not satisfy any of these ICWA requirements.

The FIA incorrectly implies that respondent should have provided more initial information regarding her Indian heritage and wrongly asserts that after its telephone call to the local Odawa Tribe, it was then up to the tribe to respond. It is not the responsibility of respondent to establish the applicability of the ICWA. "Only after notice has been provided and a tribe has failed to respond or has intervened but is unable to determine the child's eligibility for membership does the burden shift to the parties to show that the ICWA still applies." *In re JT, supra* at 183. Because we have determined that the FIA's alleged notice to an interested tribe did not comply with the ICWA, the FIA's argument that it was then the tribe's responsibility to take some further action is without merit. *Id.* ("It is impossible for a tribe to determine whether a child is a tribal member or eligible for membership if it never receives notice of the proceeding.") *Id.*

Having concluded that the probate court and petitioner failed to comply with the ICWA's notice requirements, we remain faced with the question of how this failure affects the probate court's order terminating respondent's parental rights. Because, as discussed below, we find that the probate court properly terminated respondent's parental rights according to Michigan law, we conclude that we need not reverse the probate court's order of termination. We instead

---

Michigan proceedings in which the child's tribe is undetermined, notice must be provided to the Minneapolis Area Director, Bureau of Indian Affairs. 25 CFR 23.11(b), (c)(2).

adopt the same approach taken by many other states' appellate courts that have addressed a lower court's failure to provide adequate notice under 25 USC 1912(a) and conditionally affirm the probate court's termination order, but remand so that the court and the FIA may provide proper notice to any interested tribe.

> We do not believe [reversal of the adjudication and the return of the juvenile to the parents' custody] is warranted where the sole deficiency at this time is in notice and there has been no determination that the ICWA otherwise applies to this proceeding. Thus, in *In re Colnar*, 52 Wash App [37,] 41[;] 757 P2d [534 (1988)], the court remanded the matter to the trial court to notify the appropriate tribe, and, when the tribe did not intervene in the proceeding, affirmed the original order. The court in *In re Junious M*, 144 Cal App 3d [786,] 798[;] 193 Cal Rptr [40 (1983)], ordered a similar remand for notice. We concur that these cases set forth the appropriate procedure and remand to the trial court for notice according to the [ICWA]. If the tribe does not seek to intervene, or after intervention the trial court still concludes that the ICWA does not apply, the original orders will stand. If the trial court does conclude that the ICWA applies, further proceedings consistent with the Act will be necessary. [*In re MCP, supra* at 289.]

See also *People ex rel South Dakota Dep't of Social Services, supra* at 124-125 (also remanding solely for tribal notification purposes).

Next, respondent raises several challenges to the probate court's findings and conclusions supporting its order terminating her parental rights. A court may order termination of a parent's rights when clear and convincing evidence establishes that at least one statutory ground for termination exists. MCL 712A.19b(3); MSA 27.3178(598.19b)(3); MCR 5.974(F)(3). Once a

statutory ground for termination has been proved by clear and convincing evidence, the respondent bears the burden of going forward with evidence that termination is clearly not in the child's best interests. *In re Hall-Smith*, 222 Mich App 470, 472-473; 564 NW2d 156 (1997). Absent any evidence addressing this issue by the respondent, termination of parental rights is mandatory. *Id.* at 473. A decision regarding termination is reviewed in its entirety for clear error. *In re Hamlet (After Remand)*, 225 Mich App 505, 515; 571 NW2d 750 (1997).

Respondent suggests that the probate court erred in terminating her parental rights without taking into account that Beverly, her mother, testified that she had planned on assisting respondent in caring for I.E.M. Specifically, respondent challenges that the "court in this case ruled that the rights of [respondent], the mother, must be weighed independent of the availability of this other parental assistant, in this case, the grandmother, Beverly . . . ." Respondent presumably refers to the following discussion of the probate court regarding Beverly:

> In similar fashion, much was made of grandmother Beverly's independent ability to be a fit custodian for [I.E.M.]. The argument was advanced that Beverly, the grandmother, could adequately protect [I.E.M.] and therefore [respondent] and [I.E.M.] should live with her. Again, while it may be a practical reality that Beverly could adequately parent [I.E.M.], the question for the court is whether [respondent] is, or can be, a fit custodian on her own and, if not, whether her parental rights should be terminated. If the court concludes that termination of rights should occur, the fact that a grandmother is a fit custodian may be a proper consideration for permanency planning in the context of an adoptive placement. Aside from this future possibility, the rights of [respondent] must be weighed independent of the danger

posed by sister [J.M.] as well as the surrogate parenting by the grandmother.

A thorough review of the entirety of the probate court's opinion reveals, however, that respondent's argument is without merit. The opinion reflects that the probate court carefully considered the testimony of many witnesses regarding respondent's potential to parent effectively if assisted by someone. For example, the probate court found that several witnesses' testimony established that to function effectively as a parent respondent would require constant supervision. The probate court also found that several witnesses had testified that despite the possibility of receiving parenting assistance, because of her cognitive and emotional impairments respondent would unlikely ever improve her skills sufficiently to undertake the complex responsibilities of parenting. The court concluded that it had found "clear and convincing evidence that [respondent] is an intellectually and emotionally limited teenager who, because of her significant longstanding deficits, cannot be expected to develop the intellectual and cognitive ability to be a safe and nurturing parent *regardless of how long or under what conditions she is assisted.*" (Emphasis added.) Thus, although the court did not specifically refer to Beverly in determining whether respondent could become a better parent through the assistance of another, the findings and conclusions of the probate court indicate that it determined that no amount of assistance from anyone would enable respondent to behave in the manner of "a safe and nurturing parent." Because our review of the record reflects that the court's findings and conclusion were well supported, we reject respondent's argument that the pro-

bate court erred in failing to consider Beverly's assistance in determining whether to terminate her rights.

Respondent's argument concerning the probate court's alleged error in failing to consider Beverly when deciding whether to terminate respondent's parental rights continues for approximately seventeen pages, and it is unclear exactly what further positions respondent is attempting to set forth. To the extent respondent contends that the probate court erred in terminating her rights without considering an arrangement involving Beverly as I.E.M.'s primary caregiver and respondent's also living in Beverly's home, we conclude that this position is without merit. In support of her position, respondent points to the philosophy statement found in MCL 712A.1(3); MSA 27.3178(598.1)(3), which counsels that the Juvenile Code "shall be liberally construed so that each juvenile coming within the jurisdiction of the court receives the care, guidance, and control, preferably in his or her own home, conducive to the juvenile's welfare and the best interest of the state." Respondent also points to the similar philosophy statement found in MCR 5.902(B). However, respondent's argument ignores this Court's prior observation that the language of MCL 712A.1(3); MSA 27.3178(598.1)(3)'s virtually identical predecessor provision, MCL 712A.1(2); MSA 27.3178(598.1)(2), does not require that the court place a child with relatives. *In re McIntyre*, 192 Mich App 47, 52; 480 NW2d 293 (1991). If it is in the best interests of the child, the probate court may properly terminate parental rights instead of placing the child with relatives. *Id.* See also *In re Sterling*, 162 Mich App 328, 342; 412 NW2d 284 (1987) (The court was not under a duty to place the child with rel-

atives.); *In re McCullough,* 141 Mich App 170, 171; 366 NW2d 90 (1985) (rejecting mother's argument that probate court erred in terminating her parental rights before investigating possible placement with relatives). Despite the general policy preference underlying the Juvenile Code that a child remain in its own home, the Legislature has defined certain situations in which the negative influences in the minor's home justify a departure from this policy preference and require the termination of the parents' rights. MCL 712A.19b(3); MSA 27.3178(598.19b)(3). This case falls squarely within one of the legislatively defined situations warranting a departure from the general policy of keeping the minor in its own home, specifically subsection 19b(3)(g).[5]  In light of the probate court's conclusion, discussed above, that respondent is unlikely to ever arrive at being a safe and nurturing parent, and its further determinations that a potential for physical harm to I.E.M. existed because of respondent's hallucinations and that I.E.M. would likely achieve limited intellectual and emotional development if not placed in an enriching environment, all of which observations were amply supported in the record, we conclude that the probate court did not err in finding that termination was warranted and was not contrary to I.E.M.'s best interests.

Next, respondent challenges the probate court's findings that relied on the testimony of psychologist Timothy Strauss, alleging that Strauss' testimony

---

[5] Subsection 19b(3)(g) provides for termination when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child."

regarding her ability to bond with I.E.M. was improperly speculative because he had not observed any interaction between her and I.E.M. Assuming arguendo that the probate court erred in considering Strauss' testimony regarding the poor potential for bonding between someone situated similarly to respondent and a very young child, this error was harmless. Our review of the record reveals that multiple witnesses who had observed respondent interacting with I.E.M. testified about their concerns regarding respondent's neglectful, hallucinatory, and paranoid behaviors. The significant number of witnesses who observed respondent's behavior and testified about their concerns regarding respondent's parenting abilities distinguish the instant case from *In re Hulbert*, 186 Mich App 600, 605; 465 NW2d 36 (1990), in which this Court reversed a probate court's termination order that was based almost exclusively on the speculative opinions of psychologists regarding what might happen in the future. Because clear and convincing evidence besides Strauss' generalized expert testimony established respondent's neglectful behaviors, there is no reasonable probability that the trial court's consideration of Strauss' testimony significantly affected the outcome of this case. *In re Hamlet, supra* at 518.

Finally, we reject respondent's contention that the probate court erred in allegedly comparing the home that respondent and Beverly could provide with that of a traditional family. Respondent directs our attention to the following statements of the probate court, made at the conclusion of the termination hearing:

> And there's this need for the natural family, which is kind of hard to judge, but we see it all the time, particularly here

in the probate court, where we have people searching desperately who have been adopted for natural parents and that connection, and that's a real difficult area to know. This Court believes that the natural family is not an asset if it's not safe or if it's destructive, even though there's emotional tug for that. If that's a dangerous circumstance . . . then that's out-weighed. On the other hand, it's hard to measure the actual growth benefit of being connected to a natural family. It seems very important to many people and very useful.

A review of these statements convinces us that the probate court made absolutely no attempt to compare the potential home environment of respondent and Beverly with some abstract notion of a "traditional family." The court merely referenced the juvenile code's underlying policy of keeping minors with their natural families, presumably meaning biological families, and went on to determine that in the instant case the dangers posed to I.E.M. by respondent's lack of parenting skills outweighed any benefit I.E.M. would derive from remaining with respondent. Therefore, because respondent's argument mischaracterizes the probate court's remarks, we conclude that the argument is meritless.

We conditionally affirm the order terminating respondent's parental rights, but remand for the purpose of providing proper notice to any interested Indian tribe pursuant to the ICWA. We do not retain jurisdiction.