# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. B. EUBANKS, Minor.

UNPUBLISHED
December 27, 2016

No. 333329
Wayne Circuit Court
Family Division
LC No. 13-513931-NA

Before: GADOLA, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child, KE, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical abuse and there is a reasonable likelihood of injury or abuse if returned to the parent), (g) (failure to provide proper care or custody), (i) (parental rights to one or more siblings of the child were terminated due to serious and chronic neglect or physical abuse, and prior rehabilitation attempts were unsuccessful), (j) (reasonable likelihood that child will be harmed if returned to parent), and (k)(*v*) (parent abused the child or a sibling, causing life threatening injury).[1] We affirm.

## I. FACTUAL BACKGROUND

In October 2015, Child Protective Services ("CPS") received a complaint that respondent had given birth to KE. CPS immediately requested that the hospital place a hold on KE until petitioner, the Department of Health and Human Services ("DHHS"), could file a petition and seek a placement for KE.

In November 2015, petitioner filed a permanent custody petition[2] seeking the termination of respondent's parental rights on a variety of grounds, including allegations regarding

---

[1] The trial court also terminated the putative father's parental rights under MCL 712A.19b(3)(a)(*i*) (parent is unidentifiable and has deserted the child for 28 days or more), but he has not appealed the order and is not a party to this appeal. Accordingly, we will not discuss any facts related to the putative father.

[2] Petitioner filed an amended petition later that month that was substantively identical to the original petition and only included changes to the font style and size.

-1-

respondent's inadequate living situation, her inability to financially provide for KE, and the prior terminations of her parental rights to her other children, AB, JA, and ZE, based on physical abuse and neglect as well as other concerns.[3] The trial court held a preliminary hearing and authorized the petition, placing KE in the care and custody of DHHS.

After several hearings and adjournments, a combined adjudication and termination hearing was held on May 5, 2016. Respondent did not appear, despite the attempts of her attorney and petitioner to contact her. Petitioner presented the testimony of Lakeysha James, a CPS caseworker who had been unable to make contact with respondent since taking over the case in February 2016, and Sylvia Moore, a foster care worker who had supervised respondent's scheduled visits with KE.

At the end of the hearing, the trial court determined that it could take jurisdiction over KE, that statutory grounds for termination of respondent's parental rights had been proven by clear and convincing evidence, and that a preponderance of the evidence in the record supported a finding that termination was in KE's best interests. Accordingly, on May 16, 2016, it entered a combined adjudication and termination order, under which it terminated respondent's parental rights.

## II. BEST INTERESTS

Respondent's sole contention on appeal is that the trial court erred in finding that termination was in KE's best interests.[4] We disagree.

## A. STANDARD OF REVIEW

---

[3] In its December 2013 opinion and order, the trial court found, among other things, that respondent had physically and emotionally abused AB and inflicted severe, life-threatening injuries on ZE. The trial court further noted that respondent made it clear that she would continue to use physical or abusive discipline on her children regardless of whether the discipline methods could be viewed as abusive, and that respondent "present[ed] as a very immature, dependent individual who is not focused on the needs of her children but her own self-gratification." The court mentioned that significant testimony had been presented regarding respondent's "extremely troubling behaviors, personality traits, and alcohol abuse." The trial court ultimately concluded that respondent is unable to properly parent her children, and based on her "conduct and capacity," "the children would likely suffer abuse and neglect in the long term if placed with [respondent] and . . . there is no reasonable likelihood that these conditions would ever change."

[4] Respondent briefly suggests in her brief on appeal that the trial court clearly erred in finding a statutory basis for termination of her parental rights. Because she failed to provide any argument in support of this claim, we deem this claim abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

We review for clear error a trial court's best-interest determination. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), citing MCR 3.977(K). "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted; alteration in original).

## B. ANALYSIS

Pursuant to MCL 712A.19b(5), "[t]he trial court must order the parent's rights terminated if the [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child['s] best interests." *In re White*, 303 Mich App at 713 (footnotes omitted). When it makes a best-interest determination, the trial court should weigh all available evidence, *id.*, and the trial court's focus should be on the child rather than the parent, *In re Moss*, 301 Mich App 76, 86-87; 836 NW2d 182 (2013).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (footnotes omitted); see also *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).]

Additionally, a parent's history of child abuse and neglect may be considered in determining a child's best interests. *In re Powers Minors*, 244 Mich App 111, 120; 624 NW2d 472 (2000).

Respondent first contends that the trial clearly erred in finding that termination of her parental rights was in the best interest of KE because petitioner failed to "sufficiently explore[]" the placement of KE with a maternal relative or other relatives. We disagree.

" '[A] child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)[.]' " *In re Olive/Metts*, 297 Mich App at 43, quoting *In re Mason,* 486 Mich at 164. Thus, if a child is living with relatives when the termination hearing occurs, that fact is an "explicit factor" that the trial court should consider in determining whether termination is in the child's best interests. *Id.* "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.* However, the trial court is not required to place a child with relatives in lieu of terminating parental rights. *In re Olive/Metts*, 297 Mich App at 43; *In re IEM*, 233 Mich App 438, 453; 592 NW2d 751 (1999), overruled on other grounds *In re Morris,* 491 Mich 81, 121; 815 NW2d 62 (2012). "If it is in the best interests of the child, the probate court may properly terminate parental rights instead of placing the child with relatives." *In re IEM*, 233 Mich App at 453.

First, it is significant that KE was not placed with a relative at the time of the termination hearing, unlike the children at issue in *In re Olive/Metts,* 297 Mich App at 43, and *In re Mason,* 486 Mich at 163-164. Thus, a relative placement was not an "explicit factor" that the trial court was required to consider in this case. See *In re Olive/Metts*, 297 Mich App at 43.

Further, at the beginning of the proceedings, CPS caseworker Lisa Slowinski testified that petitioner investigated potential relative placements identified by respondent. However, one of the individuals identified by respondent was not a relative, and the relative that respondent identifies on appeal, whom petitioner successfully contacted at the beginning of the case, was unable to pass the criminal background check necessary for further inquiry regarding her eligibility as a placement. Later in the proceedings, respondent consistently told foster care worker Sylvia Moore that "she didn't have anyone to take care of her child," and respondent never gave Moore the names of any relatives whom Moore could contact. Similarly, CPS caseworker Lakeysha James testified that the agency did not receive the names of any relatives who "would be available or fit" to care for KE. Accordingly, there is no indication that petitioner insufficiently investigated possible relative placements in this case.

Next, respondent argues that, given the fact that the termination petition in this case "was an original permanent custody petition," "it was clearly an error of law for the lower court to find that it was in the best interests of the infant child for her mother's rights to be terminated . . . when she was not offered formal services to rehabilitate any and all deficiencies in her ability to parent." Contrary to respondent's claim, Michigan law does not require petitioner to provide reunification services or to make efforts to correct the problems giving rise to the termination proceedings in this case since petitioner sought termination in the initial petition. See *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009).

Moreover, even though mandatory services were not offered or required in this case, Moore testified that she urged respondent to enroll in a free parenting skills class. However, each time Moore asked respondent if she had enrolled in the class, respondent "always [had] an excuse" for why she had failed to enroll. Thus, the record shows that respondent had ample opportunity to participate, at no cost, in a service that would have improved her deficient parenting skills, but she failed to do so.

In sum, neither of the reasons identified by respondent on appeal show that the trial court's best-interest determination was clearly erroneous, and respondent does not generally challenge the factual basis of the trial court's best-interest determination. Nevertheless, we note that our review of the record confirms that the trial court's factual findings and ultimate best-interest determination were not clearly erroneous.

In particular, the trial court concluded that termination of respondent's parental rights was in KE's best interests because (1) respondent demonstrated a clear disinterest in, and inability to, properly parent KE; (2) respondent's behavior demonstrated that she would never be able to provide a safe, secure, and stable environment for the child; and (3) the foster home provided the safe, secure, and stable home environment that KE needed to thrive, and KE was doing well in that home. The trial court also noted that it believed that KE "would certainly be neglected in the long-term future if ever placed in [respondent's] care and custody."

The testimony at the combined adjudication and termination hearing strongly supports the trial court's best-interest findings, showing that (1) respondent does not share a bond with KE, partially due to the fact that respondent only took advantage of a limited portion of the supervised visitation available to her; (2) respondent was unable to properly parent KE, and she demonstrated no interest in learning to properly parent KE and little interest in paying attention to KE for long periods of time, indicating a high likelihood of future neglect; (3) respondent's approach toward parenting had not changed since the 2013 termination of her parental rights to KE's siblings; (4) respondent lacked the means to provide for KE, given her lack of stable housing and ongoing unemployment; and (5) KE's foster home provided a structured and stable environment, where she was thriving. Considering this evidence in conjunction with respondent's history of abuse and neglect, it is apparent that the trial court's ruling was prudent and based on a preponderance of the evidence. See *Moss*, 301 Mich App at 83.

Accordingly, the trial court did not clearly err when it found that termination of respondent's parental rights was in the best interests of KE. See *In re White*, 303 Mich App at 713.

## III. CONCLUSION

The trial court did not clearly err in finding that termination of respondent's parental rights was in KE's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan