# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. J. HAFF, Minor.

UNPUBLISHED
May 1, 2018

No. 340038
Ionia Circuit Court
Family Division
LC No. 2017-000166-NA

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to the minor child, HH, under MCL 712A.19b(3)(a)(*ii*) and MCL 712A.19b(3)(f). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In December 2011, VB became HH's legal guardian at the request of HH's mother, who had sole legal and physical custody of HH. See MCL 700.5205 (permitting the court to appoint a limited guardian for a minor under certain circumstances). Based on the record before this Court, it appears that respondent was uninvolved in the guardianship proceedings. In January 2015, HH's mother died, leaving HH in the care of her legal guardian. The funeral service for HH's mother occurred in February 2015. Thereafter, a few of HH's maternal relatives petitioned the court to terminate the guardianship. In April 2015, the court heard the motion. At the hearing, the maternal relatives decided to withdraw the petition for termination of the guardianship, and the trial court amended the guardianship to allow contact between HH and her maternal family. The contact, however, was to be at the discretion of HH's counselor. In addition, because respondent appeared at the April 2015 hearing and indicated that he wished to have contact with HH, the court included a provision allowing him to have contact with HH also at the discretion of HH's counselor. The record in this case reflects that, at that time, the court informed respondent that if he wanted to maintain his parental rights to HH, he would have to remain involved in her life. Respondent told the court that he understood what he had to do.

HH's counselor required respondent to meet with her one-on-one so that she could prepare him to visit with HH. Respondent participated in two sessions, and a visit with HH was scheduled for early August 2015 at the Ionia County fairgrounds. Respondent, however, cancelled the visit because of transportation problems. HH's guardian testified that after it was apparent that respondent was not going to make it to the visit, respondent spoke to HH briefly on the phone. In September 2015, respondent rescheduled the visit for October 2015. Prior to the

-1-

visit, HH's counselor discovered that respondent's insurance was cancelled and would not cover the visit. She therefore notified respondent that he would be responsible for the session fee, as well as the copays for the previous sessions. She indicated that unless he paid the amount due he would be unable to see his daughter. Respondent contended that he could not pay, so he cancelled the visit. After that he continued to be unable to afford to pay HH's counselor for the privilege of visiting his daughter, so he never saw her again. He explained that he was "discouraged," did not know what to do, and could not afford a lawyer, so he thought he would pursue face-to-face contact when he could afford it.

In May 2017, HH's legal guardian filed a petition to terminate respondent's parental rights under MCR 712A.19b(3)(a) and MCL 712A.19b(3)(f). After the petition was filed, respondent sought visitation with HH through HH's counselor. Before a visit was held, the court suspended parenting time. Subsequently, an adjudication hearing was held before the trial court. After hearing testimony from HH's counselor, HH's guardian, HH's maternal grandmother, and respondent, the trial court found by a preponderance of the evidence that statutory grounds to take jurisdiction over HH existed under MCL 712A.2(b). Then, following a termination hearing, the court found by clear and convincing evidence that termination was proper under MCL 712A.19b(3)(a)(*ii*) and (f), and that termination of respondent's parental rights was in HH's best interests.

This appeal follows.

## II. DUE PROCESS

Respondent first argues that his due process rights *in the guardianship* case were violated when the trial court entered an order requiring him to comply with parenting time at the discretion of HH's counselor despite the fact that he was not a party to the underlying case and was not apprised of his rights with respect to those proceedings. Generally, we review de novo challenges to the constitutionality of a trial court's actions. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). Further, we acknowledge that it is generally a violation of a parent's due process rights for a state or state agency to "deliberately take[] action with the purpose of 'virtually assur[ing] the creation of a ground for termination of parental rights,' and then proceed[] to seek termination on that very ground." *In re B & J*, 279 Mich App 12, 19-20; 756 NW2d 234 (2008) (quotation marks and citation omitted; alteration in original). Nevertheless, our ability to review the constitutionality of the guardianship proceedings is limited by court rule. See MCR 7.203. In this case, respondent has appealed by right the order terminating his parental rights in lower court docket number 17-166-NA; he never appealed any decision in the guardianship case, lower court docket number 11-476-LG. When a claim of error arises in a separate but related case, we lack jurisdiction to decide challenges to orders entered in the separate case. See *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001); *People v Anderson*, 209 Mich App 527, 538; 531 NW2d 780 (1995). Accordingly, we conclude that, we lack jurisdiction to address whether respondent was afforded due process when the court entered the order in the guardianship case.

That is not to say that we will not consider the effect the court's order in the guardianship case had on the termination proceedings at issue in the case at hand. Here, it is apparent that the effect of the order was that all of respondent's "contact" with his daughter was at the discretion

of HH's counselor. The order provided that the contact was to be consistent with HH's best interests. But the counselor set up an additional barrier to contact between HH and respondent—money. Respondent argues that because he was unable to pay for the privilege of visiting his daughter, he did not see her between February 2015 and the time the termination petition was filed in May 2017. Further complicating the matter is the fact that the grounds for termination relied upon respondent not having sufficient contact with his child for a specified period of time. See MCL 712A.19b(3)(a) and (f). Thus, in effect, the trial court's order when coupled with monetary barriers imposed by the counselor put respondent in a position where the grounds for terminating his parental rights were, to a certain extent, self-generating.

For the foregoing reasons, in Section IV(B) of this opinion, we will consider whether the trial court erred by finding clear and convincing evidence to terminate respondent's parental rights despite the fact that, in light of the court order and the counselor's statements to him, respondent believed he had to pay for the privilege of having face-to-fact contact with HH.

## III. EXCLUSION OF TESTIMONY

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by failing to strike all testimony from HH's counselor after she refused to release HH's counseling records to him. Respondent objected to the counselor's testimony during a hearing on a motion to suspend respondent's parenting time and at the adjudication hearing. At both hearings, the trial court refused to address the issue because respondent had not filed a written motion to compel disclosure of the counseling records. Respondent then filed a motion to compel release of the records or to exclude the counselor's testimony before the termination hearing. The trial court granted respondent's motion to bar the counselor from testifying at the termination hearing but denied his motion to compel and his request to strike all of the counselor's prior testimony. "A trial court's evidentiary rulings in a child protection proceeding are reviewed for an abuse of discretion." *In re Jones*, 286 Mich App 126, 130; 777 NW2d 728 (2009). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Under MCL 330.1748(6)(b), HH's counselor, as the holder of confidential information under the Mental Health Code, may not disclose the confidential information if, in her written judgment, the disclosure would be detrimental to the HH. Thus, the counselor was not only within her legal right but was compelled to withhold the counseling records once she determined that release of the records would be detrimental to HH. See MCL 330.1748(6)(b). In response to the counselor's refusal to release the records, the trial court barred her from testifying at the termination hearing. The court did not, however, agree to strike the counselor's earlier testimony. That decision may have been an abuse of discretion because the court was free to use the earlier testimony when making the termination decision. See *In re King*, 186 Mich App 458, 465; 465 NW2d 1 (1990) (holding that at a termination hearing, the trial court may consider all exhibits and testimony elicited during prior hearings, including exhibits not formally received into evidence at the earlier proceedings). We need not make that determination, however,

because assuming *arguendo* that the court erred by not striking the counselor's prior testimony, the error was harmless.

An error is harmless when it "could not have changed the outcome of this case." *In re BKD*, 246 Mich App 212, 219; 631 NW2d 353 (2001). When multiple witnesses testify to the same observations as an expert witness, so that there is "no reasonable probability that the trial court's consideration of [the expert's] testimony significantly affected the outcome of [the] case," the error is harmless. *In re IEM*, 233 Mich App 438, 455; 592 NW2d 751 (1999), overruled in part on other grounds, *In re Morris*, 491 Mich 81; 815 NW2d 62 (2012). On appeal, respondent argues that the counselor's testimony affected the trial court's decision to suspend parenting time and the trial court's best-interest analysis, but the record does not support that conclusion.

When the trial court ruled on the motion to suspend parenting time, it based its decision on the uncontroverted evidence provided by HH's legal guardian that respondent had only seen HH approximately four times in four and a half years. Further, following the termination hearing, the trial court did not rely on the counselor's testimony when making its best-interest determination. Instead, the court found that respondent and HH did not have a strong bond because respondent had not seen HH for a very long time, and before that, he only saw her infrequently. The court also found that respondent had a history of questionable relationships, that HH's needs were being met in the guardian's care, and that there was a strong likelihood of adoption. Those findings were supported by testimony from HH's guardian, HH's maternal grandmother, and respondent. HH's guardian testified to the limited number of contacts between respondent and HH. Respondent admitted that he had not seen HH in over two years, that he called her infrequently, and that he and HH no longer had a strong bond. HH's maternal grandmother stated that HH no longer asked about respondent. Respondent admitted to relationships with girlfriends and roommates who had criminal records, including convictions for drugs and violence. HH's guardian testified to the measures she had taken to address HH's emotional, physical, and academic needs. She also stated that she intended to adopt HH to give her a sense of stability and security. Finally, the record reflects that the trial court never referenced the counselor's testimony when announcing its best-interest findings. Consequently, given that there was ample, properly admitted evidence supporting the court's best-interest determination and its decision to suspend parenting time, we conclude that the trial court's decision not to strike the counselor's prior testimony was harmless.

IV. STATUTORY GROUNDS

A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding statutory grounds for termination under MCL 712A.19b(3)(a)(*ii*) and (f). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "This Court reviews for clear error the trial court's ruling that a

-4-

statutory ground for termination has been established . . . .” *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

## B. ANALYSIS

A trial court may terminate a parent’s parental rights pursuant to MCL 712A.19b(3)(a)(*ii*) if “[t]he child’s parent has deserted the child for 91 or more days and has not sought custody of the child during that period.” This Court has held that termination is proper under subdivision (a)(*ii*) “the record shows that respondent failed to make any substantial effort to communicate with [his child] or obtain assistance in regaining custody of her for a period well beyond the statutory period.” *In re TM (After Remand)*, 245 Mich App 181, 194; 628 NW2d 570 (2001), overruled in part on other grounds, *In re Morris*, 491 Mich 81; 815 NW2d 62 (2012). Further, occasional phone contact does not negate a finding of desertion. *In re Laster*, 303 Mich App 485, 492; 845 NW2d 540 (2013).

In this case, respondent had no face-to-face contact with HH since either February or April 2015. Furthermore, it is undisputed that in the 91 days before HH’s guardian petitioned for termination of respondent’s parental rights, he had no contact with HH, did not seek any contact with her, and he did not take any steps to obtain custody of her. Rather than dispute his complete absence from HH’s life for the 91-day period before the petition was filed, respondent argues that HH’s counselor and guardian thwarted his efforts to visit HH. In support, he directs this Court to testimony that the guardian ignored his attempts to contact HH and the counselor required him to pay his outstanding balance before she would supervise visits between him and HH.

We have reviewed that testimony. Respondent admitted that in the two years leading up to the filing of the petition he called the guardian’s home four times. Further, when respondent was allowed a supervised visit with HH in August 2015, he canceled shortly before the visit was supposed to begin because he got in an argument with his sister, who had been providing him transportation to the visit. He also testified that in September 2016 he sent an e-mail to the guardian, asking if he could call HH. The guardian, however, testified that she did not see the e-mail. In addition, the record reflects that once respondent accrued a balance with the counselor, he never asked the trial court for assistance in modifying the order requiring visitation to go through the counselor and did not contact the counselor’s office between October 2015 and June 2017 to arrange to pay down the balance he owed or discuss other arrangements. The trial court found that one e-mail and four phone calls over the course of two years did not constitute substantial efforts to communicate with or obtain assistance in gaining custody of respondent’s daughter for a period longer than the required 91 days. See *In re TM*, 245 Mich App at 194. Given the lack of effort displayed by respondent in the approximately two-year period between when he last saw HH and the time the petition was filed, we do not find the trial court’s finding to be clearly erroneous.

We conclude that the trial court also did not err in finding termination appropriate under MCL 712A.19b(3)(f), which is proper if:

> (f) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:

> (*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

> (*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

In this case, respondent failed to substantially comply with the support order for the two years leading up to the filing of the petition. His only compliance was through garnishment of his wages and his unemployment benefits, which resulted in five full payments, four partial payments, and 15 months of unpaid child support. Respondent testified at the adjudication hearing that he was aware that he owed approximately $8,700 in back child support. He also admitted that he was *intentionally* unemployed for over a year and a half when he took the unpaid apprenticeship even though he was aware that he had a child support obligation at that time. Finally, he testified that he provided financial support to the mother of his other daughter, but that he never forwarded any of money to the Friend of the Court to financially support HH. His explanation was that no one from the Friend of the Court would return his calls and that he did not know the address of the Friend of the Court. Based on this testimony, we conclude the trial court did not err by finding that respondent had the ability to support HH, but that for a period of at least two years he substantially failed to do so despite a support order being in place. See MCL 712A.19b(3)(f)(*i*).

In addition, the record shows that respondent "regularly and substantially failed or neglected, without good cause," to visit, contact, or communicate with HH for a period of two or more years before the petition was filed. See MCL 712A.19b(3)(f)(*ii*). Although respondent contends he did not have the ability to visit HH because of barriers erected by HH's counselor and legal guardian, the record reflects that respondent (1) had not sent HH a gift since her birthday in either 2014 or 2015, (2) that he called her only four times in the past two years, (3) that he canceled the only visit that he scheduled with her, and (4) he never reached out to HH's counselor to even attempt to schedule additional visits until after the petition was filed. Despite a monetary barrier to having face-to-face contact with HH, respondent opted to pursue an unpaid two-year internship. And he took no steps whatsoever to challenge or avoid the counselor's monetary barrier to face-to-fact contact with HH. Stated differently, although there were obstacles to respondent having regular and substantial contact with HH, the record plainly reflects that respondent took virtually no steps to overcome those obstacles, and, instead, his choice made the obstacles more significant. In particular, we note that respondent decided to

voluntarily forego paying employment for a two-year period despite his knowledge that he had to (1) pay child support and (2) pay to visit HH. As a result, on this record, we conclude that the trial court did not err by finding he had the ability to contact, visit, or communicate with HH, but that he regularly and substantially failed to do so for the two-year period set forth in MCL 712A.19b(3)(f)(*ii*).

Affirmed.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron