# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. N. R. MYERS, Minor.

UNPUBLISHED
October 23, 2018

No. 343229
Wayne Circuit Court
Family Division
LC No. 15-521389-NA

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, EM, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

Respondent argues that the trial court clearly erred by finding statutory grounds for termination. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court "review[s] for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(j), which provides a ground for termination if:

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

EM is a special needs child due to a severe brain injury she suffered at a very young age. Immediately following her brain injury, EM required extensive surgery to reconstruct her skull, and in the future will require frequent medical examinations and treatments. This case began shortly after EM suffered her injury. As part of respondent's treatment plan, he was required to

attend EM's medical appointment, but repeatedly missed them.[1]  When respondent did appear at EM's appointments, he failed to engage with EM's doctors and made no attempt to involve himself in EM's care by asking questions or discussing EM's treatment.

As the case progressed, respondent made little effort to understand how EM's brain injury affected her cognitive and physical development.  When asked if he would like to participate in infant mental health treatment with EM, respondent stated that "he understood the needs of [EM]" and did not require further assistance. Yet the record reflects that respondent did not, in fact, understand EM's needs.  During parenting-time visits, respondent was observed dragging EM by the leg, which allowed her head to bump on the ground.  When respondent would set EM down after holding her, he would purposely drop her to the ground when she was a few inches from the floor.  Respondent also commented that EM was lazy for being unable to sit up on her own, despite that she was physically incapable of doing so.  Respondent also stated that if he dropped EM, she should be able to catch herself.  Respondent's comments reflect, in our opinion, a failure to understand that EM was physically incapable of caring for herself.  Also, respondent appeared unable to fulfill basic parenting functions when caring for EM; during parenting-time visits, respondent frequently failed to feed EM or change her diaper, and he had to be verbally reminded of these basic necessities.

These shortcomings were despite the services offered to respondent by petitioner. Although respondent participated in parenting classes and other services geared towards helping him learn how to parent EM and manage her medical complications, respondent's actions throughout this case demonstrate that he did not benefit from those services.  While petitioner had a duty to offer these services, respondent had the commensurate duty to show that he benefitted from those services.  See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Respondent's failure to benefit from services evidences that he was not in compliance with his case service plan.  See *id*.  With other parts of respondent's treatment plan, he not only failed to benefit from services, but failed to sufficiently participate.  In particular, respondent failed to consistently attend EM's medical appointments, which likely contributed to his inability to understand EM's special needs.  "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

Based on the foregoing, we conclude that the trial court did not clearly err by finding by clear and convincing evidence that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(j).  "Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Respondent also challenges whether the trial court erred by finding that termination of respondent's parental rights was in EM's best interests.  We disagree.

---

[1] Respondent missed 27 of 35 scheduled medical appointments with EM between February 1, 2016, and February 21, 2017.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

The focus at the best-interest stage is on the child, not the parent. *In re Moss*, 301 Mich App at 87. The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 364, and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other considerations include "the parent's compliance with his or her case service plan [and] the children's well-being while in care[.]" *In re White*, 303 Mich App at 714.

Here, the trial court focused on the lack of a bond between respondent and EM, as well as his inability to parent a special needs child. The trial court observed that "there doesn't appear to be much of a bond" between respondent and EM, and that EM is in need of stability and permanency, which respondent does not appear able to provide. The trial court also based its decision on respondent's "lack of appreciation for [EM]'s special needs." The trial court further acknowledged that EM's current placement, which she had been in for most of her life, was willing to adopt her. This trial court also found that the current placement was meeting all of EM's needs and demonstrated an understanding of how to address EM's special needs. These findings are all supported by the record, and they support that termination was in EM's best interests.

Respondent contends that the trial court erred by failing to analyze whether termination was in EM's best interests in light of EM's placement with her maternal grandparents. "[T]he fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43, citing *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). This Court explained in *In re Olive/Metts*:

> Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, *In re IEM*, 233 Mich App 438, 453; 592 NW2d 751 (1999), overruled on other grounds by *In re Morris*, 491 Mich 81; 815 NW2d 62 (2012); *In re McIntyre*, 192 Mich App 47, 52-53; 480 NW2d 293 (1991), the fact that the children are in the care of a relative at the time of the termination hearing is an "explicit factor to consider in determining whether termination was in the children's best interests," *Mason*, 486 Mich at 164. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. *Mason*, 486 Mich at 163-165; *In re Mays*, 490 Mich 993, 994 (2012). [*In re Olive/Metts*, 297 Mich App at 35.]

Here, the trial court did explicitly address that EM was in a relative placement. It stated:

There is a great likelihood of [EM] being adopted and even though she is placed with relatives right now, those relatives are willing to adopt, they're willing to allow [respondent] to continue to have access and be part of [EM]'s life.

It is a sad case. Like I said before, it's with a heavy heart that I do this, but I do have to find that it's in [EM]'s best interest to terminate [respondent]'s parental rights at this time.

The trial court's acknowledgment of EM's relative placement demonstrates that it was reluctant to terminate respondent's parental rights, but nevertheless found that it would be in EM's best interests to do so given that EM would likely be adopted by her maternal grandparents and respondent would remain a part of EM's life. It is therefore clear that, although EM's placement with relatives weighed against termination, the trial court considered this fact and nonetheless concluded that termination was in EM's best interests. The trial court did not stray from the requirements of *In re Olive/Metts* and *In re Mason*, and under the circumstances of this case, we conclude that the trial court did not clearly err by finding by a preponderance of the evidence that termination was in EM's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

-4-