*In re* TM (AFTER REMAND)

Docket No. 220650. Submitted December 4, 2000, at Detroit. Decided
     March 30, 2001, at 9:00 A.M.

> The Family Independence Agency petitioned in the Wayne Circuit
> Court, Family Division, Juvenile Section, to terminate the parental
> rights of Deliliah Conselyea, also known as Deliliah Robinson, and
> Bradley M. with regard to T.M., their minor child. The possibility
> that T.M. is an Indian child was first raised during the trial. Deliliah
> (hereafter respondent) testified that she was of Native American
> heritage, but was not affiliated with or a member of any tribe. The
> respondent believed that she was more than one-quarter Native
> American Indian, and thought she was from a Cherokee tribe. The
> court, Kirsten Frank Kelly, J., concluded that the federal Indian
> Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, did not apply
> because the respondent was not affiliated with or a member of any
> particular tribe. The court did not order the petitioner to provide
> any tribes notice of the proceedings. At a subsequent hearing, the
> court instructed the petitioner to notify the Cherokee tribe. The
> respondent's parental rights were thereafter terminated without fur-
> ther consideration whether the ICWA was applicable. The respon-
> dent appealed. The Court of Appeals, while retaining jurisdiction,
> entered an order remanding the matter to the circuit court for
> expansion of the record with regard to what efforts were made to
> notify the appropriate tribes. Unpublished order of the Court of
> Appeals entered February 25, 2000 (Docket No. 220650). Following
> a hearing on remand, the circuit court concluded that the petitioner
> had complied with the notice provisions of the ICWA and there was
> no indication that any tribe wished to intervene in the matter.
>
> After remand, the Court of Appeals *held*:
>
> 1. Once notice is provided to the appropriate tribe, it is for the
> tribe to decide if the child qualifies as an "Indian child." If proper
> notice is provided and a tribe fails to either respond or intervene in
> the matter, the burden shifts to the parents to show that the ICWA
> still applies.
>
> 2. The respondent's testimony during the trial was sufficient to
> trigger application of the notice requirements of 25 USC 1912(a).
> Notice is mandatory, regardless of how late in the proceedings a

child's possible Indian heritage is uncovered. Therefore, petitioner was required to send notice to the applicable tribe or tribes, by registered mail, return receipt requested, or to the Minneapolis Area Director, Bureau of Indian Affairs, in the same manner, if the child's tribe could not be determined.

3. The notice in this matter may have been made by certified mail, with no return receipt requested. However, the order terminating the respondent's parental rights need not be set aside for failure to comply with the notice provisions of the ICWA because the record shows that all three federally recognized Cherokee tribes and the appropriate office of the Bureau of Indian Affairs received actual notice, and no tribe came forward.

4. The ICWA does not require the petitioner to demonstrate receipt of notice by all tribes notified by the Bureau of Indian Affairs.

5. The petitioner's substantial compliance with the notice requirements was sufficient to satisfy the ICWA because actual notice to the Cherokee tribes and the Bureau of Indian Affairs was demonstrated.

6. The trial court did not err in refusing to allow the respondent to testify regarding her Indian heritage during the hearing on remand. The proposed additional testimony was not relevant to the issues before the court on remand.

7. The record supports the court's finding that clear and convincing evidence exists for terminating the respondent's parental rights pursuant to MCL 712A.19b(3)(a)(ii). The court did not clearly err in finding that termination of the respondent's parental rights was not contrary to the child's best interests.

Affirmed.

1. INDIANS — PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — INDIAN CHILD WELFARE ACT.

Failure to comply with the notice provisions of the federal Indian Child Welfare Act, which generally may be grounds for invalidating state proceedings to terminate the parental rights to an Indian child, does not require automatic reversal of an order terminating parental rights where the respondent's parental rights have otherwise been properly terminated under Michigan law; in such a case, the Court of Appeals may conditionally affirm the lower court's termination order but remand so that the court and the Family Independence Agency may provide proper notice to an Indian tribe (25 USC 1912[a]).

2. INDIANS — PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — INDIAN
   CHILD WELFARE ACT — WORDS AND PHRASES — INDIAN CHILD.

   The question whether a minor child qualifies as an "Indian child"
   under the federal Indian Child Welfare Act is a question for the
   tribe to decide once notice of an involuntary proceeding in a state
   court involving the foster care placement of, or termination of
   parental rights to, the child is provided to the appropriate tribe; the
   burden of showing that the act still applies shifts to the parents
   where proper notice is provided and the tribe fails to either
   respond or intervene in the matter (25 USC 1903[4], 1912[a]).

3. INDIANS — INDIAN CHILD WELFARE ACT — TERMINATION OF PARENTAL RIGHTS
   — NOTICE.

   Substantial compliance with the notice requirements of the federal
   Indian Child Welfare Act may be found to satisfy the requirements
   of the act where it is shown that actual notice was achieved
   through a comparable method and the purported Indian child and
   the appropriate Indian tribe or tribes are not prejudiced as a result
   of the failure to strictly comply with the requirements (25 USC
   1912[a]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Susan A. Harris*, Assistant Attorney General, for the Family Independence Agency.

*Carolyn A. Blanchard*, for T.M.

*Lee A. Somerville*, for Deliliah Conselyea.

AFTER REMAND

Before: BANDSTRA, C.J., and WILDER and COLLINS, JJ.

COLLINS, J. Respondent-appellant Deliliah Conselyea (respondent) appeals as of right from an order of the circuit court, family division, juvenile section, terminating her parental rights to T.M. Respondent contends that the order terminating her parental rights must be reversed because petitioner Family Independence Agency (FIA) did not establish by clear and con-

vincing evidence at least one ground for termination, because termination of her parental rights is contrary to the best interests of T.M., and because petitioner and the circuit court did not comply with the notice provisions of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.* We conclude that petitioner's substantial compliance with the notice provisions of the ICWA in this case was sufficient because actual notice was demonstrated and that the circuit court did not err in terminating respondent's parental rights. Therefore, we affirm.

The amended petition filed by petitioner on August 13, 1998, alleged that police officers found T.M. and a younger sibling walking through their neighborhood at 3:00 A.M., carrying food and books. The children reportedly told the officers that they were leaving their home because their father, respondent Bradley M. (Hereafter B.M.), mistreated them and sold illegal drugs out of their home. The petition identified Sherita Kates, the woman living with B.M. at the time, as T.M.'s mother.

Neither B.M. nor Kates attended the preliminary hearing in this case, nor did either of them attend the pretrial hearing. On September 25, 1998, the day trial was scheduled, respondent appeared in court and indicated that she was the mother of T.M. The court delayed the trial because of the late notice to respondent and because a new petition was required. At that hearing, the court did not inquire of respondent whether she or T.M. were of Indian heritage.

The possibility that T.M. is an Indian child was first raised during the trial. Respondent testified that she was of Native American heritage, but was not affiliated with or a member of any tribe. She thought that

she was from a Cherokee tribe, probably from Mississippi, and believed that she was more than one-quarter Native American Indian. The court concluded that the ICWA did not apply because respondent was not affiliated with or a member of any particular tribe and, therefore, the court did not order petitioner to provide notice of the proceedings to any tribes. However, at a subsequent hearing, the court instructed petitioner "to notify the Cherokee Tribe, which is the tribe that the mother stated that she believed she was affiliated with, but not a registered member."

The issue of the application of the ICWA was not brought up again until after respondent's parental rights were terminated and an appeal was filed. This Court granted petitioner's request to remand this matter to expand the record with regard to what efforts were made to notify the appropriate tribes. After the hearing on remand, the circuit court concluded that petitioner had complied with the notice provisions of the ICWA and there was no indication by any tribe that it wished to intervene.

Because failure to comply with the notice provisions of the ICWA may be grounds for invalidating state proceedings to terminate the parental rights to an Indian child, 25 USC 1914, we address respondent's last issue on appeal first. Respondent contends that because petitioner failed to send notice by registered mail, return receipt requested, to all tribes in which respondent may be able to claim membership, the order terminating her parental rights must be reversed. Whether the circuit court failed to satisfy a notice requirement of the ICWA is a question of law, which this Court reviews de novo. *In re IEM*, 233 Mich App 438, 443; 592 NW2d 751 (1999). Any factual

findings made by the trial court are reviewed for clear error. MCR 2.613(C).

The ICWA provides specific procedures and standards that apply where states are involved in removing Indian children from their families. *In re IEM, supra.* Congress established these minimum federal standards "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." 25 USC 1902. The ICWA defines an "Indian child" as

> any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.] [25 USC 1903(4).]

So that Indian tribes may exercise their right to intervene in state actions to remove Indian children from their families, the ICWA includes a notice provision, which provides in pertinent part as follows:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, *by registered mail with return receipt requested,* of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior[1]] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. [25 USC 1912(a) (emphasis added).]

---

[1] See 25 USC 1903(11).

See also MCR 5.980(A)(2). Once notice is provided to the appropriate tribe, it is for the tribe to decide if the minor child qualifies as an "Indian child." *In re IEM*, *supra* at 447-448; *In re Shawboose*, 175 Mich App 637, 639; 438 NW2d 272 (1989). If proper notice is provided and a tribe fails to either respond or intervene in the matter, the burden shifts to the parties (i.e., the parents) to show that the ICWA still applies. *In re IEM*, *supra* at 449, citing *In re JT*, 166 Vt 173, 183; 693 A2d 283 (1997).

MCR 5.965(B)(7) requires that a court directly inquire about the tribal status of the parents or the minor child at the time of the preliminary hearing. The failure to comply with MCR 5.965(B)(7) may, in some cases, invalidate the proceedings. *In re Elliott*, 218 Mich App 196, 208-209; 554 NW2d 32 (1996). However, this Court has found that where a respondent's parental rights have otherwise properly been terminated under Michigan law, but the petitioner and the lower court failed to comply with the notice provisions of the ICWA, reversal of the lower court's order is not always necessary. Rather, this Court may "conditionally affirm the [circuit] court's termination order, but remand so that the court and the FIA may provide proper notice to any interested tribe." *In re IEM*, *supra* at 450.

At the time of the preliminary hearing in this case, the circuit court did not know that respondent was T.M.'s mother; thus, the court could not inquire with regard to the possibility that she was of Indian ancestry. However, respondent's testimony during the trial that she was of Native American heritage and that, while not a member of a particular tribe, she believed that she was of Cherokee ancestry, was sufficient to

trigger the application of the notice requirements of 25 USC 1912(a). See *In re IEM, supra* at 446-447. The child's or respondent's lack of enrollment in a tribe does not foreclose the possibility that the child could qualify as an Indian child. *Id.* at 445. Further, "[n]otice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered." *In re Kahlen W,* 233 Cal App 3d 1414, 1424; 285 Cal Rptr 507 (1991). Accordingly, because the trial court was informed that T.M. was possibly an Indian child as defined by 25 USC 1903(4), petitioner was required to send notice to the applicable tribe or tribes, by registered mail, return receipt requested, or to the Secretary of the Interior, in the same manner, if the child's tribe could not be determined. 25 USC 1912(a); *In re IEM, supra* at 448. Specifically, for Michigan children, the notice must be provided to the Minneapolis Area Director, Bureau of Indian Affairs (BIA), 25 CFR 23.11(b), (c)(2), when the child's tribe is unknown. *In re IEM, supra* at 448, n 4.

The record in this case does not establish that notice was sent to any tribe or office of the BIA by registered mail, return receipt requested. The parties failed to develop the issue of the *manner* of notice in the trial court, even on remand, and the trial court made no finding with regard to whether notice was made by registered mail, return receipt requested. Our review of the record indicates that notice may have been made by certified mail, with no return receipt requested.[2] In any event, because the record shows that all three federally recognized Cherokee

---

[2] While 25 CFR 23.11(a) and (d) allow notice to be sent by certified mail, a return receipt is still required.

tribes and the appropriate office of the Bureau of Indian Affairs received actual notice, and no tribe came forward, the court's order terminating respondent's parental rights need not be set aside for failure to comply with the notice provisions of the ICWA.

During the hearing on remand, petitioner's director of the Office of Urban Indian Affairs testified that he prepared a genealogy chart for T.M. on the basis of information that respondent provided. The chart indicated that respondent was descended from both Apache and Cherokee tribes. Further testimony demonstrated that petitioner provided written notice to all three federally recognized Cherokee tribes. All those tribes responded in writing that they were unable to provide documentation that T.M. was eligible for enrollment, and none of them chose to intervene. Because petitioner was not aware of all recognized Apache tribes, and respondent provided no information regarding a particular tribe, petitioner provided notice to the Minneapolis Area Director, Bureau of Indian Affairs. That office also responded in writing, stating that there were no Apache tribes in its jurisdiction and that it had forwarded notice to other appropriate BIA regional offices. Some of the Apache tribes contacted by those offices responded in writing; none of them chose to intervene.

Respondent contends that the notice provided by petitioner was insufficient to satisfy the ICWA because petitioner did not receive responses from all the Apache tribes notified by the BIA. However, when the identity of the tribe is unknown, the ICWA requires only that the petitioner send notice to the Secretary of the Interior, or Area Director of the appropriate regional office of the BIA. *In re Levi U,* 78 Cal App 4th

191, 198; 92 Cal Rptr 2d 648 (2000). Here, petitioner notified the appropriate regional office and that office responded. Contrary to respondent's assertions, the ICWA does not require that petitioner demonstrate receipt of notice by all tribes notified by the BIA.

Respondent also relies on *In re IEM, supra,* in support of her argument that the lower court proceedings must be invalidated because of noncompliance with the ICWA's notice provisions. First, as noted above, this Court found in *In re IEM* that failure to comply with the notice provisions of the ICWA does not necessarily invalidate an otherwise proper termination order. *In re IEM, supra* at 449-450. Moreover, this case is distinguishable from *In re IEM,* in that there was no evidence in that case that the petitioner contacted the BIA; rather the petitioner contended on appeal that it had contacted the Michigan Indian Child Welfare Agency and made a telephone call to a local tribe. *Id.* at 448. Here, petitioner substantially complied with the ICWA notice requirements by sending notice to the Cherokee tribes and the BIA, and it was established at the hearing on remand that notice was received.

Other states applying the ICWA's notice requirements have concluded that the failure to send notice by registered mail with a return receipt requested does not invalidate the proceedings if actual notice was achieved through a comparable method. See *In re MSS,* 86 Wash App 127, 134-135; 936 P2d 36 (1997), review den 133 Wash 2d 1008 (1997), cert den sub nom *Sather v Washington,* 523 US 1098 (1998) (where notice sent by overnight mail, not registered mail with a return receipt requested, and actual notice was received by the tribe, substantial compliance with the

ICWA was demonstrated); *In re BJE*, 422 NW2d 597, 599-600 (SD, 1988) (actual notice sufficient where there was substantial compliance with the ICWA); *In re LAM*, 727 P2d 1057, 1060-1061 (Alas, 1986) (where state failed to satisfy the ICWA's requirement of notice by registered mail, order terminating parental rights to Indian child must be reversed "unless the procedural violation was harmless because the mother had actual notice of the termination hearing"); see also *In re ES*, 92 Wash App 762, 774; 964 P2d 404 (1998); *In re Kahlen W*, *supra* at 1421-1422. But see *People ex rel South Dakota Dep't of Social Services, In re CH*, 510 NW2d 119, 123-124 (SD, 1993) (where the petitioner did not send notice to a tribe by registered mail, return receipt requested, and did not send any notice to the Secretary of the Interior, notice was insufficient, even though tribe had responded by letter that there was no evidence of tribal membership). We conclude, therefore, that because actual notice to the Cherokee tribes and the BIA was demonstrated in this case, petitioner's substantial compliance with the notice requirements was sufficient to satisfy the ICWA.

Further, there is no merit to respondent's argument that the circuit court erred in denying her the opportunity to testify regarding her Indian heritage during the hearing on remand. This Court specifically remanded the case only to determine if the requirements of the ICWA were satisfied. Where a case is remanded for further proceedings, the lower court may not take action that is inconsistent with the appellate court's remand order. *McCormick v McCormick*, 221 Mich App 672, 679; 562 NW2d 504 (1997). Respondent had already established that she might be a Native American Indian. It was for the tribes to

determine if the minor child was an Indian child under the ICWA. *In re IEM, supra* at 447-448. Additional testimony from respondent was not relevant to the issues before the circuit court on remand. Therefore, the court did not err in refusing to allow respondent to testify.

Our decision in this case in no way diminishes the importance of compliance with the notification provisions of the ICWA. Notice is an essential component in achieving the goals of the ICWA. *In re MSS, supra* at 134. Where notice is sent by registered mail, return receipt requested, return of the receipt clearly demonstrates that a tribe or the BIA received notice. In this particular case, given that actual notice was otherwise shown and no tribes chose to intervene, neither T.M. nor the tribes were prejudiced, and a remand so that notifications could be sent out by registered mail with return receipts requested would not further serve the goals of the ICWA.

Having determined that the circuit court proceedings need not be invalidated on the basis of failure of notice, we address the merits of the circuit court's decision to terminate respondent's parental rights. In order to terminate parental rights, the court must find that at least one of the statutory grounds for termination has been met by clear and convincing evidence. MCL 712A.19b(3); MCR 5.974(F)(3); *In re IEM, supra* at 450. Once a statutory ground for termination has been met by clear and convincing evidence, termination of parental rights is mandatory unless the court finds that termination clearly is not in the child's best interests. MCL 712A.19b(5); *In re Trejo Minors,* 462 Mich 341, 356-357; 612 NW2d 407 (2000). We review a

decision regarding termination of parental rights in its entirety for clear error. *In re IEM, supra* at 451.

At the time the proceedings in this case commenced, termination of parental rights pursuant to subsection 19b(3)(a)(ii) required that petitioner show by clear and convincing evidence that "[t]he parent of a child has deserted the child for 91 or more days and has not sought custody of the child during that period."[3] Respondent acknowledged that she had had no contact with T.M. and had done nothing to obtain custody of her for more than two years preceding the trial in this case. Respondent contends that her behavior does not constitute desertion, however, because she did make efforts to obtain custody of T.M. years earlier, but was prevented from doing so by the child's father, B.M., who had abused respondent.

Respondent testified that she left B.M. in 1993, taking T.M. with her, but B.M. found her and took the child back. Respondent contacted the police, but they told her they could not do anything because it was a custody matter. Respondent testified that B.M. allowed respondent to visit T.M. sometimes, but would physically and sexually assault respondent during those visits. Respondent did not report any of the assaults to the police, but she reported one of the assaults to the prosecutor's office. Respondent further testified that she contacted a legal aid office about obtaining custody of T.M., and that she was placed on a waiting list and no one ever contacted her. Respondent maintained that she did not know where B.M. and T.M. were living.

---

[3] Subsection 19b(3)(a)(ii) was amended effective March 1, 1999.

Notwithstanding respondent's reasons for abandoning her attempts to gain custody of T.M., the record supports the court's finding that clear and convincing evidence exists for terminating respondent's parental rights pursuant to subsection 19b(3)(a)(ii). Respondent acknowledged that after her initial contact with the legal aid office, she never called back or attempted to contact other authorities for assistance in regaining custody of T.M. In 1996, respondent had contact with a protective services worker with regard to her other child while respondent was briefly hospitalized. Respondent acknowledged that she said nothing to the worker about T.M., nor did she seek the worker's assistance in any way concerning custody of her. Because the record shows that respondent failed to make any substantial effort to communicate with T.M. or obtain assistance in regaining custody of her for a period well beyond the statutory period, we conclude that the circuit court did not err in finding clear and convincing evidence for terminating respondent's parental rights under subsection 19b(3)(a)(ii).[4]

Further, the record does not show that termination of respondent's parental rights was contrary to T.M.'s best interests. *In re Trejo Minors, supra*. As the circuit court noted, while respondent may have had a bond with T.M. in the past, that was almost five years before the hearings in this case, or 1994 at the latest.

---

[4] The circuit court's order and findings on the record indicate that, with regard to termination of respondent mother's parental rights, the only statutory ground relied on by the court was subsection 19b(3)(a)(ii). It is not clear from the circuit court's order or findings that the court relied on subsections 19b(3)(g) or (j), as argued by respondent. In any event, only a single statutory ground is required in order to terminate parental rights. *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999). Therefore, we need not address the other grounds discussed by respondent.

Moreover, the circuit court gave little weight to the fact that respondent was providing a good home for another, younger child. The court concluded that the two children were not similarly situated, in that respondent had abandoned T.M., but not the younger child. We find nothing in the record to suggest that the circuit court clearly erred in finding that termination of respondent's parental rights was not contrary to T.M.'s best interests.

Affirmed.