# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. WEHMEYER, Minor.

UNPUBLISHED
January 29, 2015

No. 322682
Berrien Circuit Court
Family Division
LC No. 2012-000119-NA

Before: MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to the minor child NW under MCL 712A.19b(3)(a)(*ii*) (parent has deserted the child for 91 or more days without seeking custody) and (g) (failure to provide proper care and custody). We affirm.

We first note that respondent argues on appeal that he was not properly adjudicated. Respondent asserts in two footnotes that, because he was not served with the March 2013 supplemental petition, his right to procedural due process was violated, and thus the court improperly exercised jurisdiction for purposes of the adjudicative phase of the proceedings. Respondent also contends that, because he was not properly adjudicated, the trial court improperly considered his compliance with the case service plan, or lack thereof, when deciding whether to terminate under MCL 712A.19b(3)(a)(*ii*). Because respondent failed to cite relevant authority or explain or rationalize these arguments, and because he failed to include the issues in the statement of questions involved on appeal relative to his brief, they are abandoned. MCR 7.212(C)(5); *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999); *Nederlander v Nederlander*, 205 Mich App 123, 128 n 1; 517 NW2d 768 (1994). Regardless, because termination of respondent's parental rights occurred "following the filing of a supplemental petition for termination after the issuance of the initial dispositional order," respondent is not permitted to challenge the trial court's March 2013 adjudication on an appeal from the order terminating his parental rights. *In re SLH, AJH, and VAH*, 277 Mich App 662, 668; 747 NW2d 547 (2008). Respondent could have raised the challenges in a direct appeal, MCR 3.993(A)(1), but he failed to appeal the adjudication order.[1] Because he failed to file an appeal and the

---

[1] Although respondent did not become engaged in the proceedings until several months after the adjudication, at which time he revealed a proper address for service and an appeal of right would no longer have been available, respondent nonetheless did not even attempt an application for leave. Indeed, respondent never challenged below the court's exercise of jurisdiction.

-1-

termination did not occur at the initial disposition, respondent cannot now collaterally challenge the trial court's adjudication in an appeal from the termination order. See *In re Hatcher*, 443 Mich 426, 436, 444; 505 NW2d 834 (1993); *In re SLH*, 277 Mich App at 668 ("[A]n adjudication cannot be . . . attacked following an order terminating parental rights" unless the "termination occurs at the initial disposition as a result of a request for termination contained in the original, or amended, petition for jurisdiction[.]").[2] To the extent that respondent is also arguing that the adjudication violated our Supreme Court's recent decision in *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014), the argument lacks merit, as the one-parent doctrine, which was rejected by the Court, was not employed against respondent. Rather, the adjudication was expressly based on respondent's conduct.

Respondent primarily argues on appeal that the trial court erred in finding that statutory grounds existed to terminate his parental rights, along with erring in its determination that termination was in the child's best interests. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

MCL 712A.19b(3)(a)(*ii*) provides for termination when "[t]he child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period." MCL 712A.19b(3)(g) provides for termination when a "parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

In August 2012, NW's mother died, and respondent's whereabouts were unknown. NW entered care on December 13, 2012, because she lacked proper care and custody. Respondent was contacted on December 19, 2012, by a Child Protective Services (CPS) worker, informed that NW was in foster care, and provided with the CPS worker and the trial court's contact

---

[2] We note that, although it was later returned to petitioner, the petitioner mailed a notice of the adjudication hearing to the address specifically provided by respondent to petitioner in a December 2012 conversation, wherein respondent was informed of the proceedings.

information. Despite having this information and the ability to immediately invoke and protect his parental rights, respondent did not contact the agency or the trial court for the next nine months. Petitioner served various court filings on respondent at an address provided by respondent himself when he had spoken to the CPS worker on December 19, 2012. Respondent's whereabouts were unknown until September 2013, when a caseworker located him in a Kentucky jail. In October 2013, respondent began consistently communicating with the agency and reported that he had not seen NW from somewhere between "a couple" years to five years. Respondent lacked knowledge of the child's age and birth date. He requested that NW be placed with him in Kentucky, but he refused to travel to Michigan to visit her in November 2013. Respondent moved to Michigan in March 2014, but he was unable to visit NW because of concerns that it would be detrimental to NW's mental health, given that respondent was a stranger to her. Although respondent could not see NW until he received training regarding parenting a child with Reactive Attachment Disorder (RAD), respondent failed to attend a meeting regarding the issue in the weeks leading up to termination. Respondent was also not present when the trial court rendered its decision regarding his parental rights on the record. There is no evidence in the record that respondent provided financial support to NW at any point during the proceedings. *In re Mayfield*, 198 Mich App 226, 230, 235; 497 NW2d 578 (1993). Respondent's compliance with the case service plan was dismal to say the least, including the failure to participate in numerous drug screens, with a few he did take being positive for drug use. Respondent simply did not take the steps required of him to parent the child, nor did the record show that he was capable of developing the necessary parenting skills. At the time of the termination, respondent had serious mental health issues, anger and substance abuse problems, a lack of suitable housing, no employment or income, and he had no real and viable plan to care for NW.

Respondent argues that termination under MCL 712A.19b(3)(a)(*ii*) was not appropriate because he was unable to contact the agency between December 2012 and September 2013, as he had lost the telephone numbers he was given. However, the record establishes that respondent was aware that petitioner had a website that contained contact information. And clearly he had the ability through minimal efforts to reach the appropriate authorities had he truly wished to defend his parental rights and fight for custody. Respondent also argues that he could not be expected to contact the agency given his mental health issues, but a parent's alleged reasons for desertion are not relevant under the statute. See *In re TM*, 245 Mich App 181, 193-194; 628 NW2d 570 (2001), overruled on other grounds by *In re Morris*, 491 Mich 81, 121; 815 NW2d 62 (2012). Moreover, respondent's mental health issues, while substantial, did not preclude him from simply contacting the agency; the record shows that he had the proven ability to communicate with the agency as reflected later in the proceedings. Because respondent failed to make any efforts to regain custody of the child for several periods of time that exceeded the 91-day statutory period during the 18-month proceeding, the trial court's finding that termination was proper pursuant to MCL 712A.19b(3)(a)(*ii*) does not leave this Court with "a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App at 459. Furthermore, the record supported the trial court's conclusion that respondent failed to provide proper care or custody for NW and that there was no reasonable expectation that he would be able to provide proper care and custody within a reasonable time considering NW's age.

With respect to the best-interests determination, a court may consider a child's bond to his or her parent, the parent's parenting ability or skills, the child's need for permanency,

stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

Here, respondent did not have a bond with NW, and he did not possess appropriate parenting skills. Despite being told that NW was in foster care, respondent did not maintain consistent contact with the agency until NW had been in care for over nine months. In October 2013, respondent did not know NW's age, could not recall when he last saw her, and did not have any knowledge about her location or living arrangements. As noted earlier, in November 2013, respondent refused to travel to Michigan to attend a visitation with NW. Later, it was recommended that respondent not have visitation with NW because she did not know him, believed that another man was her father, and it was unknown whether NW would be returned to respondent in the future. At the time of termination, respondent had two other children who were in foster care in Kentucky, and he was not involved in those proceedings.

NW had been diagnosed with RAD, Attention Deficit Hyperactivity Disorder, and possibly Post-Traumatic Stress Disorder, and there was an indication that she had previously been sexually abused by a relative. NW's RAD diagnosis resulted in her being unaware of social boundaries and there were concerns that she could be taken advantage of as a result. NW required continued therapy, stability, and consistency. Respondent was unable to provide this to NW at the time of termination, and there is no indication that he would be able to provide it within a reasonable time in the future. Further, NW did not know respondent or his fiancé, and NW's therapist reported NW had difficulty when meeting new people. As of May 2014, the therapist believed that it could take six months to one year of therapy before NW could even be introduced to respondent. Although NW required a caregiver who understood her diagnoses and was patient, respondent had not learned about NW's needs, let alone shown a capacity to properly address those needs. The trial court did not clearly err in finding that termination of respondent's parental rights was in the minor child's best interests.

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto