*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* T. E. BIXLER, Minor.

UNPUBLISHED
January 27, 2022

No. 357897
Lenawee Circuit Court
Family Division
LC No. 18-000133-NA

Before: GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her young daughter who had been in care since shortly after her birth. Respondent challenges the court's grounds for taking jurisdiction over the child, contends that the Department of Health and Human Services (DHHS) breached its duty to attempt relative placement, and argues that the court failed to comply with the notice provisions of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. Although we discern no error with the court's jurisdictional and placement decisions, documentation necessary to support that proper notice was given under ICWA and MIFPA is absent from the record. Accordingly, we conditionally reverse the termination order and remand for further proceedings to address the notice issue with respect to the Cherokee Nation.

## I. BACKGROUND

Respondent gave birth to TEB on July 21, 2018. As respondent had used heroin and misused prescription opiates during her pregnancy, TEB went through withdrawal after birth. On July 30, the DHHS filed a petition to take TEB into care based on respondent's drug use, lack of housing, and unemployment. TEB's maternal grandmother sought placement of the infant, but her home was deemed inappropriate. Respondent entered a plea to jurisdiction and TEB was placed with an unrelated foster family, where she remains to this day.

Respondent was noncompliant with her case service plan throughout much of the proceedings. She continued to use marijuana, alcohol, opiates, methamphetamines, and prescription medications. Respondent was frequently without a job or suitable housing, failed to attend many of her drug screens, and failed to consistently attend parenting time. And respondent delayed in revealing the identity of TEB's father. When the child's father was finally revealed, he

indicated that he believed he was part Cherokee, triggering a duty on the part of the court and the DHHS to investigate TEB's heritage.

At one point the court changed the goal to termination and adoption. However, respondent began to show progress and the court changed its position. On November 20, 2020, respondent gave birth to LAW. The DHHS briefly placed LAW in the same foster home as TEB before placing LAW with his maternal grandmother, which was then deemed a fit location. Eventually, the matter proceeded to a termination hearing and the court terminated respondent's parental rights to TEB under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide care and custody), and (j) (reasonable likelihood of harm if returned to parent's care).

## II. JURISDICTION

Respondent challenges the circuit court's factual and legal bases for exercising jurisdiction over TEB. However, respondent waived any error in this regard.

"A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken" below. *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (quotation marks and citation omitted). That is, "[a] party cannot stipulate [to] a matter and then argue on appeal that the resultant action was error." *Id*. at 588 (quotation marks and citation omitted). To allow a respondent to assign "error on appeal [to] something that she deemed proper in the lower court" would "permit [a] respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

In the circuit court, respondent admitted to several grounds alleged in the petition to take jurisdiction. The court also specifically asked respondent whether she was "acknowledging that jurisdiction concerning your child is appropriate as the child was subject to a substantial risk of harm due to the child's mental wellbeing based on substance use on your part." Respondent personally answered, "Yes." As respondent expressly conceded the court's jurisdiction, respondent cannot challenge the court's jurisdictional decision on appeal.

## III. ICWA AND MIFPA NOTICE REQUIREMENT

Respondent further contends that the DHHS and the circuit court failed to comply with the notice requirements of ICWA and MIFPA.

ICWA and MIFPA were both enacted in an effort to "protect[] the best interests of [American] Indian children and promot[e] the stability and security of [American] Indian tribes and families." *In re England*, 314 Mich App 245, 250-251; 887 NW2d 10 (2016) (quotation marks and citations omitted). The notice provisions of ICWA and MIFPA generally require that a tribe be notified "when there are sufficient indications that the child may be an [American] Indian child . . . ." *In re Morris*, 491 Mich 81, 100; 815 NW2d 62 (2012). If the child's tribe cannot be determined, notice must be sent to the Bureau of Indian Affairs. *Id*. at 124 (providing overview of the notice process under 25 USC 1912(a) in appendix to opinion). Similar notice requirements apply under MIFPA. See MCL 712B.9. Specifically, ICWA requires a relevant Indian tribe be notified by registered mail, return receipt requested, when there is "reason to know" that an Indian

child may be involved in the child protective proceeding. 25 USC 1912(a); see also MCL 712B.9(1). Compliance with these notice provisions "is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered." *In re TM (After Remand)*, 245 Mich App 181, 188; 628 NW2d 570 (2001) (quotation marks and citation omitted), overruled in part on other grounds by *Morris*, 491 Mich at 115 n 26. Neither the court nor the DHHS claimed a lack of knowledge and they did attempt notification in this case.

However, mere "assertions . . . that notice had been sent" are insufficient when the record does not contain "copies of the actual notice purportedly sent," and does not "include any original or copy of a registered mail return receipt, which is necessary to show not only that notice was received, but also determine when the 25 USC 1912(a) waiting period begins." *Morris*, 491 Mich at 112. A lack of documentation makes it "impossible to discern from the record . . . whether notice was actually sent, to whom it was sent, and whether the notices were received by the appropriate recipients." *Id*. The trial court is dutybound

> to ensure that the record includes, at a minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail pursuant to 25 USC 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice. [*Morris*, 491 Mich at 114.]

After TEB's father indicated that he had "Cherokee Indian heritage," the DHHS sent notices to three Cherokee tribal organizations: the Cherokee Nation in Tahlequah, Oklahoma; the United Keetoowah Band of Cherokee Indians in Tahlequah; and the Eastern Band of Cherokee Indians in Cherokee, North Carolina. Contrary to the requirements of ICWA and *Morris*, copies of these notices and the accompanying documentation were not placed on the record. We note, however, that the certified mail return receipts were submitted to the court.

The Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee both indicated that TEB was not eligible for tribal membership and that they would not intervene in this action. Given the tribes' decisions, the failure of the DHHS to present the original notice and documentation to the court is harmless. *Id*. at 120-121. The same cannot be said with regard to the Cherokee Nation. Although a court report indicates that the Cherokee Nation denied TEB's eligibility for membership, no letter was placed in the record. The court's mere assertion is insufficient under *Morris*. Accordingly, this gap must be closed on remand—the DHHS must present both the notice and documentation sent to the Cherokee Nation and the letter from the Cherokee Nation denying TEB's eligibility for membership. Only then will the notice requirements of the state and federal statutes be met. And only then may termination be ordered.

In the meantime, "the proper remedy for ICWA-notice violations is to conditionally reverse the trial court and remand for resolution of the ICWA-notice issue." *Id*. at 122. This Court has applied this same procedure to MIFPA issues. See *In re Beers*, 325 Mich App 653, 678; 926 NW2d 832 (2018). Once the identified gaps in the record are closed, the court's termination order may be reinstated. *Morris*, 491 Mich at 123.

## IV. RELATIVE PLACEMENT

Finally, respondent challenges the trial court's and DHHS's failure to consider placement of TEB with the child's maternal grandmother.

"When a child is removed from a parent's care during the adjudication phase under MCL 712A.2(b), . . . 'the court shall order the juvenile placed in the most family-like setting available consistent with the juvenile's needs.' " *In re COH*, 495 Mich 184, 192; 848 NW2d 107 (2014), quoting MCL 712A.13a(12). The DHHS "must complete an initial services plan within 30 days of the child's placement." *COH*, 495 Mich at 192, citing MCL 712A.13a(10)(a). "As part of the initial services plan, the [DHHS] is required to comply with MCL 722.954a(2)."[1] *COH*, 495 Mich at 192-193. "MCL 722.954a applies from the moment a child is removed from his or her parents' care, i.e., *before* any placement decision is made, and, consequently, the requirements of MCL 722.954a are intended to guide the [DHHS's] initial placement decision." *COH*, 495 Mich at 195 (emphasis in original).

Under MCL 722.954a(2), "[u]pon removal, . . . the supervising agency shall, within 30 days, identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs." The DHHS fulfilled this duty. The court report related to the August 28, 2018 hearing indicates that the foster-care worker, Sabrina Beitelschies, conducted a family team meeting with respondent and her extended family. Respondent was living with her mother at that time. This meant that TEB could not be placed with her maternal grandmother. Respondent again requested that her mother be investigated for placement after respondent moved out on her own. Beitelschies indicated she had a "home visit scheduled for [August 27, 2018,] to begin the process of assessing whether [the maternal grandmother] is a safe placement option" for TEB. Beitelschies further indicated that if the maternal grandmother's home was found appropriate, Beitelschies would "complete a DHHS-3130A (Relative Home Study) within 30 days, and if the family was fully assessed to be safe and appropriate," TEB would be moved. By the next court report, however, respondent's "relatives were assessed by the agency and determined to be inappropriate, unwilling and/or unsafe for foster care placement of this child." Thus, the DHHS complied with the statutory requirements of MCL 722.954a(2).

---

[1] MCL 722.954a was amended by our Legislature in 2016. 2016 PA 190, effective September 19, 2016. MCL 722.954a(1) through (5) remained unchanged from the version in effect when *COH* issued, but subsection (6) was changed to subsection (9). Three new subsections were added related to siblings, which are found in MCL 722.954a(6) through (8). MCL 722.954a(6) is relevant to this case, although it does not alter the outcome. Notably, MCL 722.954a(6) requires that reasonable efforts be made to place siblings in the same foster care placement unless the DHHS "documents that a joint placement would be contrary to the safety or well-being of any of the siblings." LAW was initially placed with the same nonfamily placement as TEB. Testimony was presented, however, that TEB's negative behaviors were exacerbated by the presence of LAW, including increased incidents of "head banging." Thus, the trial court moved LAW to the maternal grandparents' home.

"The preference for placement with relatives is also expressly preserved throughout the review process . . . ." *COH*, 495 Mich at 195. Specifically, when relatives are involved, the DHHS is required to meet the following requirements under MCL 722.954a:

> (4) Not more than 90 days after the child's removal from his or her home, the supervising agency shall do all of the following:
>
> (a) Make a placement decision and document in writing the reason for the decision.
>
> (b) Provide written notice of the decision and the reasons for the placement decision to the child's attorney, guardian, guardian ad litem, mother, and father; the attorneys for the child's mother and father; each relative who expresses an interest in caring for the child; the child if the child is old enough to be able to express an opinion regarding placement; and the prosecutor.
>
> (5) Before determining placement of a child in its care, a supervising agency shall give special consideration and preference to a child's relative or relatives who are willing to care for the child, are fit to do so, and would meet the child's developmental, emotional, and physical needs. The supervising agency's placement decision shall be made in the best interests of the child.
>
> \* \* \*
>
> (9) A person who receives a written decision described in subsection (4) may request in writing, within 5 days, documentation of the reasons for the decision, and if the person does not agree with the placement decision, he or she may request that the child's attorney review the decision to determine if the decision is in the child's best interest. If the child's attorney determines the decision is not in the child's best interest, within 14 days after the date of the written decision the attorney shall petition the court that placed the child out of the child's home for a review hearing. The court shall commence the review hearing not more than 7 days after the date of the attorney's petition and shall hold the hearing on the record.

This review process is "limited to a narrow time period."

> [T]he request for documentation of the reasons for the placement decision must be made within 5 days of receiving the placement decision, the potential petition for a review hearing must be made within 14 days of the written decision, and the review hearing must be held within 7 days after the petition. [*COH*, 495 Mich at 196.]

And "there is no indication within the statutory language of MCL 722.954a that the Legislature intended that the preference for placement with relatives exists beyond the time frame identified within MCL 722.954a." *COH*, 495 Mich at 196; see also *id*. at 198 ("[T]he plain language of MCL 722.954a limits the applicability of the preference [for placement with relatives] to only the initial stage of the process, i.e., immediately after a child is removed from his or her parents' care and during the statutory review period established in MCL 722.954a(3).").

The DHHS did consider placing TEB with the maternal grandmother within 90 days of the child's removal from respondent's home. Although the DHHS placed TEB in nonrelative foster care, the DHHS began its investigation into the maternal grandmother's home. Unfortunately, a Child Protective Services (CPS) claim had been substantiated against the grandmother around the same time. The situation, involving another grandchild placed in the grandmother's care, was later described as "unique" and "was quickly resolved." Even so, the CPS matter rendered the grandmother's home an "inappropriate" or "unsafe" option during the first 90 days of these proceedings.

Moreover, although the maternal grandmother claimed that she followed up with the DHHS and never received a more detailed answer regarding its decision, there is no record indication that the grandmother "request[ed] in writing, within 5 days, documentation of the reasons for the decision" or "request[ed] that the child's attorney review the decision" in light of the child's best interests. MCL 722.954a(9). Indeed, the CPS investigator testified that the maternal grandmother and her husband appeared preoccupied "with their own issues" surrounding the CPS report at that time and could not devote energy to securing placement of TEB. The grandmother's more active efforts to have TEB placed in her home occurred well past the 90-day window provided in the statute.

The DHHS met the requirements in MCL 722.954a(4) and (5). Under MCL 722.954a(2), the DHHS was required to not merely identify and locate relatives with whom to place the minor child, but rather to identify and locate "a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs" for placement. Plus, the DHHS's placement decision is to be made "in the best interests of the child" above all else. MCL 722.954a(5). Because the maternal grandmother had a CPS referral in 2018, respondent has failed to demonstrate any error in the DHHS's initial determination that placement with the grandmother would be inappropriate or unsafe. Additionally, considering the information the DHHS had at the time of the placement, and for at least the first 90 days of placement, continued placement of TEB in foster care appears to have been in TEB's best interests.

The maternal grandmother did not appear before the court until August 19, 2020, more than two years after TEB's removal. By that point, TEB was bonded with the foster parents, the only parents she had ever known. Although the grandmother's home was then deemed a safe and suitable placement for LAW, changing TEB's placement at that point would not have been in her best interests. Therefore, the circuit court did not err by failing to consider the maternal grandmother as a viable option for placement of TEB.

We conditionally reverse the circuit court's termination order and remand for the court to address the ICWA-notice issue with respect to the Cherokee Nation. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

-6-