*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re POUGET/HERRERA, Minors.

UNPUBLISHED
March 31, 2022

No. 357082
Macomb Circuit Court
Family Division
LC Nos. 2018-000043-NA
2018-000044-NA
2018-000045-NA
2018-000046-NA

Before: K. F. KELLY, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist). We affirm.

## I. FACTS

In January 2018, respondent's four children, then ages 11, 9, 6, and 6 months, were removed from her care because of abandonment, neglect, respondent's substance abuse, and lack of housing. Respondent pleaded no contest to the allegations of the petition, and the trial court assumed jurisdiction over the children. The trial court adopted the parent-agency treatment plan that required respondent to provide proof of legal income, obtain suitable housing, participate in substance-abuse assessment, testing, and treatment, undergo psychological evaluation, and participate in and benefit from parenting classes, and maintain a bond with the children.

More than three years later, despite numerous services being provided, respondent had failed to rectify the conditions that caused the children to be removed from her care. Respondent failed to comply with most aspects of the treatment plan and failed to benefit from those services in which she participated. Specifically, respondent continued to use illegal substances, often failed to participate in drug screenings, tested positive for substances when she did participate, failed to obtain adequate housing, failed to demonstrate that she had legal income, and repeatedly demonstrated poor parenting skills. Accordingly, the trial court found that termination of respondent's parental rights to the children was warranted under MCL 712A.19b(3)(c)(*i*) and that

termination of respondent's parental rights was in the children's best interests. This appeal followed.

## II. DISCUSSION

### A. ICWA AND MIFPA NOTICE PROVISIONS

Respondent contends that remand to the trial court is necessary because the trial court record does not contain sufficient documentation to demonstrate that the notice requirements of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.*, were satisfied. We disagree.

The application and interpretation of the ICWA and the MIFPA involve questions of law that we review de novo. *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012); *In re Detmer/Beaudry*, 321 Mich App 49, 59; 910 NW2d 318 (2017). We review the trial court's factual findings for clear error, which occurs if this Court has a definite and firm conviction that the trial court made a mistake. *In re England*, 314 Mich App 245, 254; 887 NW2d 10 (2016).

Both the ICWA and the MIFPA were enacted to protect, preserve, and promote the security and stability of Indian families, tribes, and tribal culture. *Id*. at 250-251. Toward those goals, the notice provisions of the ICWA and MIFPA generally require that a tribe be notified of child custody proceedings "when there are sufficient indications that the child may be an [American] Indian child." *In re Morris*, 491 Mich at 100. When a child's tribe cannot be determined, the Bureau of Indian Affairs (BIA) must be notified. *In re Morris*, 491 Mich at 124. Specifically, the ICWA provides, in relevant part:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. . . . [25 USC 1912(a).]

Similarly, the MIFPA provides, in relevant part:

> (1) In a child custody proceeding, if the court knows or has reason to know that an Indian child is involved, the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to intervene. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the secretary in the same manner described in this subsection. . . . [MCL 712B.9(1).]

"[N]otice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered." *In re TM (After Remand)*, 245 Mich App 181, 188; 628 NW2d 570 (2001), overruled on other grounds by *In re Morris*, 491 Mich 81 (quotation marks and citation omitted).

In *In re Morris*, our Supreme Court held that the trial court is charged with certain recordkeeping under 25 USC 1912(a). The Court stated:

> [T]rial courts have a duty to ensure that the record includes, at minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail pursuant to 25 USC 1912(a), and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice. In addition, it would be helpful—especially for appellate purposes—for the record to include any additional correspondence between the petitioner, the court, and the Indian tribe or other person or entity entitled to notice under 25 USC 1912(a). [*In re Morris*, 491 Mich at 114.]

When the trial court record does not demonstrate compliance with the notice provisions, the remedy is to conditionally reverse the trial court and remand for resolution of the matter. *Id*. at 122.

When the proceedings in this case began in 2018, DHHS notified the BIA regarding the proceedings, providing the limited information available regarding the children's ancestry. The BIA responded that the limited information provided was not sufficient to determine whether the children had Native American lineage or tribal eligibility. All parties to the proceedings indicated that they were satisfied that notice had been provided. In October 2020, however, respondent again indicated that the children have Native American heritage and this time identified the Cherokee Nation. In November 2020, the agency notified the BIA and the Cherokee Nation with return receipt requested. Foster care worker Ellie Lauer testified that she received the postal receipts confirming that the Cherokee Nation and BIA had received the notice. The BIA confirmed receipt of the notice and that the Cherokee Tribe had been notified. Neither entity, however, indicated that the children were eligible for tribal membership.

At the termination hearing, respondent argued that although DHHS notified the BIA and the Cherokee Nation, the notices lacked pertinent information. Similarly, on appeal respondent argues that the notices contained inaccurate and incomplete information, such as incorrect birthdates, names of grandparents, and addresses. Lauer, however, testified that respondent refused to provide additional information regarding the children's lineage that might have helped to ascertain whether they had Native American heritage. Given her refusal to provide the information she now deems vital, respondent cannot claim error on appeal. See *Bloemsma v Auto Club Ins Ass'n (After Remand)*, 190 Mich App 686, 691; 476 NW2d 487 (1991) (The appellant cannot successfully assert error to which the appellant contributed by plan or negligence). Moreover, neither the Cherokee Nation nor the BIA indicated that the notices contained insufficient information in 2020. The 2020 letter from the BIA, which is a standard form, contains a section that is to be checked by the BIA when there is insufficient information provided; that section was not checked on the 2020 letter in this case.

Respondent also argues that there is insufficient documentation in the record to determine whether proper notice was sent. Contrary to this assertion, however, the record includes the required documentation. The record contains a 2018 notice for each child and a copy of the return receipt from the BIA. The record also contains a letter from the BIA indicating that at that time there was insufficient information for it to determine tribal affiliation. Thus, DHHS fulfilled its duty to inform BIA, but neither BIA nor DHHS could inform a specific tribe at that time without additional information. The record also indicates that respondent's attorney at that time expressed satisfaction with the testimony provided regarding the 2018 notices.

Notice again was provided in 2020 after respondent informed the trial court that the children were related to the Cherokee Nation. The record contains a notice relevant to each child, together with proof that the notices were sent via registered mail to the Cherokee Nation and the BIA, a return receipt from the Cherokee Nation dated November 16, 2020, and a letter from the BIA acknowledging that notice was sent to the Cherokee Nation. Lauer testified that the agency received confirmation from the Cherokee Nation and BIA that they received the required paperwork. We conclude that the record sufficiently supports the finding that adequate notice was provided under the ICWA and the MIFPA.

## B. STATUTORY BASIS FOR TERMINATION

Respondent contends that the trial court incorrectly and prematurely terminated her parental rights to the children under MCL 712A.19b(3)(c)(*i*). We disagree.

To terminate parental rights, the trial court must find that at least one statutory basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). We review for clear error the trial court's determination that a statutory basis for termination of parental rights has been proven by clear and convincing evidence, as well as the trial court's factual findings supporting its determination. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). A factual finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *Id*.

In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), which provides:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-4-

We conclude that the trial court in this case did not clearly err by determining that there was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Termination of parental rights is proper under subsection (c)(*i*) when "the totality of the evidence amply supports" that the parent has not accomplished "any meaningful change in the conditions" that led to the trial court assuming jurisdiction of the child, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and when there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. MCL 712A.19b(3)(c)(*i*). Failure of a parent to comply with the case service plan is evidence that the parent will not be able to provide proper care and custody for the child. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014).

Here, the conditions that led to the adjudication were respondent's abandonment and neglect of the children, her substance abuse, and her lack of adequate housing. After the children were removed from her care in January 2018, respondent was ordered to comply with the parent-agency treatment plan, which required her to participate in a substance-abuse assessment, psychological evaluation, and parenting classes, to obtain and maintain a legal income, and to obtain and maintain suitable housing. After being provided services for over three years, however, respondent had failed to rectify the conditions that led to the adjudication. The trial court found that respondent completed a substance-abuse assessment and initially participated in therapy, but began refusing drug screens in October 2020, and thereafter had multiple positive screens for cocaine, methamphetamine, and amphetamine. Respondent failed to demonstrate that she had legal income and adequate housing; she had been evicted from her housing and did not demonstrate that she had found new housing. At the time of the termination hearing, respondent was not compliant with her substance-abuse treatment and was not participating in random drugs screens. Respondent completed parenting classes, but had not benefited from them; during parenting time with the children, respondent often failed to manage the children's behavior, acted inappropriately in front of them, and was argumentative and hostile with the service providers and foster parents.

The record thus demonstrates that more than 182 days had passed since the initial disposition and respondent had not rectified the conditions of abandonment, neglect, substance abuse, and improper housing. Considering respondent's lack of progress and unwillingness to further participate in services, there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. Therefore, the trial court did not clearly err by finding that MCL 712A.19b(3)(c)(*i*) had been established by clear and convincing evidence.

## C. BEST INTERESTS

Respondent contends that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

When a statutory basis for termination has been demonstrated the trial court must terminate the parent's parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). We review for clear error the trial court's decision regarding a child's best interests. *Id*. at 226. When determining whether the termination of parental rights is in a child's best interests, the trial court should weigh all the available evidence, and consider a variety of factors

including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being in the foster home, and the possibility of adoption. *In re White*, 303 Mich App at 713. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011).

In this case, the trial court found that respondent had a bond with the three oldest children, but did not have appropriate parenting skills or a desire to improve her parenting skills. The trial court observed that respondent had not demonstrated the ability to provide permanence, stability, and finality given her failure to provide a stable residence or income. The trial court found that respondent had not substantially complied with the parent-agency treatment plan and also found that the children were doing well in their foster homes and that the foster parents were willing to adopt the children. These facts are supported by the record. The children had been in care for three years and needed permanency and stability, which the respondent had not demonstrated she could provide. Respondent had not complied with the parent-agency treatment plan and was not attempting to do so. The children were bonded with their foster parents and all of the children's needs were being met. Based on the record as a whole, the trial court did not clearly err by finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Michael F. Gadola