*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
May 13, 2025
11:33 AM

*In re* R. E. HANNING, Minor.

No. 371904
Branch Circuit Court
Family Division
LC No. 23-006525-NA

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

MALDONADO, P.J. (*concurring*).

While I concur with the majority opinion, I write to stress why failing to follow the inquiry requirements under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*., and their attendant regulations, 25 CFR 23.1 *et seq*., and court rules, MCR 3.001 *et seq*., risks harming children by threatening their necessary, recognized relationship with their tribe, as well as any permanency that was prematurely established. The later a child is identified as Indian under the law, the greater the potential disruption to the child's life.

ICWA is a federal law enacted in 1978 "in response to growing concerns over abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *In re Morris*, 491 Mich 81, 97; 815 NW2 62 (2012) (quotation marks and citation omitted). The United States Senate held four years of extensive hearings that documented the well-known government policy of removing Indian children from Indian families and communities for the purpose of assimilating Indian people into American society.[1] In a rebuke of the Indian child

---

[1] Problems that American Indian Families Face in Raising Their Children and How These Problems Are Affected by Federal Action or Inaction: Indian Child Welfare Hearings Before the Subcomm. on Indian Affairs of the Comm. on Interior and Insular Affairs, 93 Cong. (1974), available at <https://www.narf.org/ nill/documents/icwa/federal/lh/hear040874/hear040874.pdf> (accessed April 14, 2025).

removal policy, Congress sought to preserve Indian families, Indian tribes, and tribal culture by passing ICWA:

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . . [25 USC 1902.]

A tribe's children are its future citizens, voters, and leaders. ICWA, therefore, legally recognizes that the children of Indian tribes have a right to a relationship with their tribe that is as important as the tribal rights outlined in ICWA.

To enforce this entitlement, ICWA creates a panoply of substantive and procedural rights that follow an Indian child, but can be enforced by not only the child, but the child's parents, Indian custodian, or tribe. In *Haaland v Brackeen*, 599 US 255, 378; 143 S Ct 1609, 1687; 216 LEd2d 254 (2023), the United States Supreme Court affirmed that tribes have the right to intervene in ICWA court hearings and collaterally attack court decrees at any point, even after adoptions have been finalized, if ICWA provisions were not followed. This underscores the importance of strict adherence to ICWA requirements to avoid invalidation of court orders. 25 USC 1914.

In particular, notice to a child's tribe is such a critical part of ICWA and MIFPA that failure to provide notice in a timely manner can result in the conditional reversal of a child welfare case all the way back to its beginning, even late into the proceedings. See *In re Morris*, 491 Mich at 121; *In re TM* (*After Remand*), 245 Mich App 181, 188; 628 NW2d 570 (2001), overruled on other grounds by *In re Morris*, 491 Mich at 115 n 26. See also MCL 712B.39. Reversal delays permanency for children, but both federal and state law makers determined that the consequences of such delay are outweighed by the consequences of severing the ties between a child and their tribe. See 25 USC 1914; MCL 712B.39.

To protect the rights of Indian children and their tribes and to help avoid delays in permanency, the Bureau of Indian Affairs regulations mandate the following:

> (a) State courts must ask *each participant* in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. [25 CFR 23.107 (emphasis added).]

Similarly, the Michigan court rules require trial courts to "inquire if the child or either parent is a member of an Indian tribe." MCR 3.965(B)(2). The majority correctly acknowledges that the trial court violated federal and state court rules by failing to inquire of respondent whether he knew or had reason to know if the child could be an Indian child. However, failure to make this inquiry is not directly subject to collateral attack under either ICWA or MIFPA, which allow tribes to intervene in child custody proceedings involving an Indian child. 25 USC 1911(c); 25 USC 1914; MCL 712B.39. So, in the present case, with no "reason to know that an Indian child is involved," *In re Morris*, 491 Mich at 88 (quotation marks and citation omitted), there is no cause for

conditional reversal. Crucially, though, that does not mean the case cannot and will not be reversed later. If in subsequent proceedings, even at adoption, the court knows or has reason to know that the child is an Indian child, the law requires conditional reversal. See *In re Morris*, 491 Mich at 121; MCL 712B.39. That is why this error, though not subject to conditional reversal in the present case, is still serious, and the trial court should make it a priority to avoid the error in the future.

If courts, officers of the court, and the DHHS follow the law to the letter, such compliance provides the highest level of protection for Indian children. Our legislators spent years studying and debating the issues before passing what they determined to be the best laws and rules to balance what are sometimes competing interests in Indian child welfare cases. That is why the federal law and state court rules require that the court ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know if the child is an Indian child. See 25 CFR 23.107; MCR 3.965(B)(2). Failure to do so can cause harm to children that otherwise would have been avoidable because the longer it takes to identify a child as Indian, the greater the potential for disruption to the child's life and the case.

/s/ Allie Greenleaf Maldonado